2005 OK CIV APP 45

**CHESAPEAKE OPERATING, INC.**
an Oklahoma corporation,
Plaintiff/Appellee,

v.

**CARL E. GUNGOLL EXPLORATION,**
INC., an Oklahoma corporation, Defendant/Counterclaimant/Appellant,

v.

Gothic Production Corporation; Chesapeake Energy Corporation; Chesapeake Exploration Limited Partnership; Gothic Energy Corporation; Chesapeake Investments Limited Partnership; and TLW Investments, Inc., Third–Party Defendants/Appellees.

No. 100,567.

Court of Civil Appeals of Oklahoma,
Division No. 3.

June 1, 2005.

Robert P. Costello, Gregory A. McKenzie, Freda L. Williams, Oklahoma City, OK, for

Plaintiff/Appellee and Third–Party Defendants/Appellants.

Mark D. Christiansen, Harvey D. Ellis, L. Mark Walker, Crowe & Dunlevy, P.C., Oklahoma City, OK, for Defendant/Counterclaimant Plaintiff/Appellant.

KENNETH L. BUETTNER, Chief Judge:

¶1 On April 23, 1996, a landman with Gungoll Exploration and a land manager with Chesapeake Operating, Inc. came to an understanding, which they memorialized in a letter, with respect to Chesapeake Operating's use of title information owned by Gungoll. Both men, and consequently their companies, forgot about this agreement and subsequently performed as if it did not exist. Upon rediscovery of the letter agreement, Gungoll wrote Chesapeake Operating August 22, 2001, seeking to enforce the agreement. Chesapeake Operating responded with a lawsuit for declaratory judgment. It then moved for summary judgment on several grounds, including the equitable defenses of laches and estoppel, which the trial court granted. We affirm.

¶2 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*." *Carmichael v. Beller,* 1996 OK 48, ¶2, 914 P.2d 1051, 1053. "If it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party." 12 O.S. Supp.2002 Ch. 12, App. 1, D.Ct. Rule 13 (e).

¶3 The agreement concerned acquisition by Chesapeake Operating of certain title information owned by Gungoll in Grady and Caddo counties, Oklahoma. Paragraph 3 of the agreement states:

It is understood and agreed that it is CHESAPEAKE's intention to acquire

rights below the Pennsylvania formations. In the event CHESAPEAKE or its partners acquire any working interest in any formations above the base of Pennsylvania formations (including the Spiers, Boatwright and Goddard formations) in the lands covered by this agreement, by any means, including the purchase of oil & gas leases, farmout agreements, trades or through orders of the Oklahoma Corporation Commission, CEGX [Gungoll] shall have the right to acquire this interest at the same terms as said interest was acquired by Chesapeake. In the event the acquired interest covers formations both above and below the base of the Pennsylvania formations (as described above) then the price CEGX would pay, should they elect to acquire an interest would be 50% of CHESAPEAKE's acquisition price. CEGX shall have ten (10) day (sic) (exclusive of Saturday's (sic) Sunday's (sic) and legal holidays) from receipt of notice from CHESAPEAKE of any acquisition to elect to acquire the offered interest. Failure to elect within this ten day election period shall be deemed an election not to acquire said interest. Notice shall include copies of the leases or agreement whichever is the case, assignments and description of the cost.

¶ 4 The trial court found, and the record supports, that after the 1996 agreement, Chesapeake Operating and the Third–Party Defendants (Affiliates) began acquiring producing gas reserves. It further found that Gungoll was aware that some of these transactions included shallow rights in the lands in question. Also, in 1997, 1998, and 1999, the Affiliates proposed drilling and did drill wells in the subject lands and acquired some shallow rights from Gungoll in these shallow wells. It stated that Gungoll owned rights in these wells and either was a participant or farmed out its interest to the Affiliates. As late as 2001, the Affiliates and Gungoll continued negotiations with respect to interests in the subject lands. The court found that the Affiliates either operated or participated in several shallow wells in the subject lands and that Gungoll was the operator of some of these wells. It then noted that after five and one-half years, Gungoll made demand on the

Affiliates to furnish a written summary of all oil and gas leasehold and working interests acquired since the date of the agreement.

¶ 5 In granting the Motion for Summary Judgment, the trial court stated:

Each party admits that they had "forgotten" about the letter agreement. During this period of forgetfulness the parties continued their oil and gas operations on a day-to-day basis. Many of these operations were with each other. Gungoll never asserted any claim to the shallow rights working interests acquired by the Affiliates for five and one-half years. Gungoll acted inconsistent with the letter agreement by continuing to deal with the Affiliates as if no agreement existed. The Affiliates put great sums of money at risk in their investments in the subject lands. Gungoll did not have to subject itself to those risks, but now wants to reap the rewards. The Affiliates acquired interests in these areas through mergers and other means that were well publicized. It is clear to this Court that Gungoll had to know that the Affiliates were acquiring interests in the subject lands.

The Court finds that the delay in Gungoll asserting its rights under paragraph 3 of the letter agreement was unreasonable. Nothing would have prevented them from doing so. To enforce the agreement now would cause the Affiliates undue and unfair prejudice. Therefore, the doctrine of laches applies to bar Gungoll's assertion of and right it had under paragraph 3.

For the same reasons as above, Gungoll is estopped from asserting its claims. By not asserting its claims in a timely manner, Gungoll lead the Affiliates to believe the provision was not going to be enforced. In turn, the Affiliates invested substantial sums of money in the oil and gas properties without fear of reprisal. Gungoll remained silent, or encouraged, the Affiliates to participate in the production of the shallow rights in the subject lands.

If Gungoll believed that the Affiliates acquisition fell within the terms of paragraph 3 they were under a duty to act. For five and one-half years Gungoll ig-

nored or treated the agreement as if it did not exist even though it continued a course of dealing with the Affiliates contrary to the agreement. The delay in asserting a claim is unreasonable and prejudicial to Affiliates who were induced into investing great sums of money by the inaction of Gungoll.

¶ 6 Chesapeake Operating's fourth ground for summary judgment included the defenses of laches and estoppel.[1] The trial court found Gungoll barred by laches and estopped from asserting its rights under the contract and granted relief to Chesapeake Operating. We find that the material facts are not in dispute and therefore examine the law.

¶ 7 In *Smith v. The Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 9, 50 P.3d 1132, 1138, the Oklahoma Supreme Court states the elements of laches:

> Laches is an equitable defense to stale claims. There is no arbitrary rule for when a claim becomes stale or what delay is excusable. Application of the doctrine is discretionary depending on the facts and circumstances of each case as justice requires. As an affirmative defense, the party claiming the doctrine's benefit has the burden of proof. The party invoking the laches defense must show unreasonable delay coupled with knowledge of the relevant facts resulting in prejudice. Delay is deemed excusable if it is induced or contributed to by the adverse party. Furthermore, laches is not a defense to one lacking notice of a right to proceed or a cause of action—the elements of laches are simply not met when there is an absence of knowledge and affirmative acts to mislead.

¶ 8 Gungoll claims that because it also "forgot" about the agreement, then it did not have notice of its right to proceed until it recovered its copy of the letter agreement, thus defeating the defense of laches. Chesapeake counters that "[m]ere ignorance of the

facts will not excuse delay. One must be diligent and make such inquiry and investigation as the circumstances reasonably suggest and means of knowledge are equivalent to actual knowledge." *Winn v. Shugart*, 112 F.2d 617, 622 (10th Cir.1940). Still addressing the defense of laches, the *Winn* court stated, "the duty to act with dispatch is especially imperative where one claims an interest in property that is highly speculative. One may not withhold his claim to a highly speculative venture, such as was involved in these wildcat oil and gas leases and permits, to await the outcome of an effort to develop them put forth by another, and then when his efforts are crowned with apparent success, come in and claim the fruits thereof." *Id.* at 623. Underscoring the reason for the equitable defense, the *Winn* court closed with "laches does not concern itself with the mere lapse of time, but with the inequity of permitting a claim to be enforced." *Id.*

¶ 9 If the undisputed evidence establishes the elements of laches, then the court properly grants summary judgment on that ground as a matter of law. Cf. *Russell v. Williams*, 1998 OK CIV APP 135, ¶ 13, 964 P.2d 231, 236 ("... the evidence before the trial court fails to establish as a matter of law: knowledge, prejudice, or unreasonable delay. Summary judgment on the issue of laches was error.")

¶ 10 In the case at bar, Gungoll entered the agreement and had knowledge of it, even if individual employees did not. Its claim to enforce the contract is barred by laches. Pursuant to the undisputed material facts in this case, its claim is stale, unexcused, and prejudicial to the Affiliates. Enforcement would be inequitable.

¶ 11 Because of the way the parties conducted business for five years, the undisputed facts and circumstances of this case also support the defense of estoppel. The elements of the defense are found

---

1. Its first argument was that the contract violated the Rule Against Perpetuities. The second was that Paragraph 3 failed as to certain sections for lack of consideration. The third challenged Paragraph 3's application to shallow rights obtained through mergers and corporate acquisitions and the fifth states that Gungoll was not entitled to claim an option in working interests in certain wells because it had executed subsequent inconsistent agreements covering those wells. The trial court specifically stated that not all grounds pled had merit for granting summary judgment.

throughout our jurisprudence, including *Apex Siding & Roofing Company v. First Federal Savings & Loan of Association of Shawnee,* 1956 OK 195, ¶ 6, 301 P.2d 352, 355:

> Equitable estoppel is the result of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might have otherwise existed as against a person who, in good faith, relied on such conduct and has been thereby led to change his position to his detriment, and who has acquired some corresponding right. It holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under the circumstances, has in good faith, relied thereon. Whether the doctrine of equitable estoppel is applicable depends on the facts and circumstances of each case.

¶ 12 Although Gungoll forgot about the contract, with respect to the defense of estoppel, Gungoll may be "... charged with knowledge of facts which it ought to have known." *Columbian National Life Insurance Company v. Rodgers,* 116 F.2d 705, 707 (10th Cir.1940). "Knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts." *Id.*

¶ 13 In *Arctic Cat, Inc. v. Injection Research Specialists, Inc.,* 362 F.Supp.2d 1113 (D.Minn.2005), a snowmobile manufacturer brought an action for declaratory judgment of non-infringement and invalidity of patents with respect to electronic fuel injection systems. Arctic Cat alleged that in nearly ten years after the initial communication about the EFI system, none of the previous lawsuits had asserted any claims about the patent infringement alleged in this case. It complained that it had been lulled into believing that Injection Research Specialists was not going to sue for that particular patent. Arctic Cat asserted the defenses of laches and equitable estoppel as bars to claims for patent infringement. After a detailed discussion of the undisputed evidence and the elements of each of the defenses, the District Court of Minnesota granted summary judgment in favor of Arctic on the grounds that laches and estoppel barred Injection Research Specialists' claim.

¶ 14 Gungoll's course of business with the Affiliates and Chesapeake Operating for five and one half years led them to rely on Gungoll's conduct and change their position. Affiliates purchased interests and invested substantial sums in developing shallow prospects during that time. Gungoll's attempt to enforce the contract after years of ignoring the agreement would result in inequity to Affiliates and an unearned windfall to Gungoll. Estoppel is established by the undisputed facts.

¶ 15 For the reasons expressed, we AFFIRM the order of the trial court granting summary judgment in favor of Plaintiff/Appellee and Third–Party Defendants/Appellees.

JOPLIN, P.J., and HANSEN, J., concur.