2016 OK 106

Joe STEVENS and Cecil Dooley, Oklahoma taxpayers and vested participants in the Oklahoma Public Employees Retirement System, Plaintiffs/Appellants,

v.

Joseph A. FOX, Executive Director of the Oklahoma Public Employees Retirement System, DEwayne McAnally, Steve Paris, Michael D. Evans, Jill Geiger, James R. "Rusty" Hale, Thomas E. Kemp, Jr., Don Kilpatrik, Brian Maddy, Lucinda Meltabarger, Michael Moradi, Cleve Pierce and Frank Stone, as and constituting the Board of Trustees of the Oklahoma Public Employees Retirement System, Defendants/Appellees.

Case Number: 114676

Supreme Court of Oklahoma.

Decided: 10/11/2016

Robert A. Nance and Stephanie L. Theban, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Inc., Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Marc Edwards and Catherine L. Campbell, Phillips Murrah, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

Patrick R. Wyrick, Solicitor General, Mithun S. Mansinghani, Deputy Solicitor General, and Sarah A. Greenwalt, Assistant Solicitor General, Office of the Attorney General, Oklahoma City, Oklahoma, for Attorney General.

COMBS, V.C.J.:

## FACTS AND PROCEDURAL HISTORY

¶ 1 The focus of this appeal concerns the validity of HB 2630; 2014 Okla. Sess. Laws c. 375 (effective November 1, 2014).[1] HB 2630 created the Retirement Freedom Act (74 O.S. Supp. 2014, § 935.1 et seq.). The main purpose of HB 2630 was to create a new defined contribution system within the Oklahoma Public Employees Retirement System (OPERS) for persons who initially become a member of OPERS on or after November 1, 2015. This includes most state employees hired on or after this date.[2] To accomplish this purpose, the act provides OPERS could either establish a new defined contribution "plan or use an existing plan." Title 74 O.S. Supp. 2014, § 935.3. Those members of OPERS hired prior to this date are allowed to remain in the defined benefit plan under OPERS. To help understand the issues involved it is necessary to explain the differences between defined benefit plans and defined contribution plans.

¶ 2 Prior to November 1, 2015, most state employees and some other governmental employees have participated in the OPERS defined benefit plan. A defined benefit plan provides an employee who retires from the plan a fixed periodic payment based upon a formula. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 439, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). In other words, it provides a pension. As the name implies, the benefit is defined. If you know the factors to place in the formula you can determine the benefit. In the case of the OPERS defined benefit plan, both the employer and employee make monthly contributions to fund the plan. The plan assets are kept in a pool of assets rather than individual dedicated accounts for employees. The employer bears the entire investment risk and underfunding may result in a myriad of ways including a shortfall in the plan's investments, insufficient contributions or inaccurate actuarial assumptions. These plans typically use actuaries to determine assumptions concerning the necessary contributions and investment re-

---

1. On March 30, 2016, the Appellants filed a motion requesting oral argument. The Appellants' motion is denied.

2. The new defined contribution system is not applicable to certain correctional officers, probation and parole officers, fugitive apprehension agents, firefighters of the Oklahoma Military Department, district attorneys, assistant district attorneys and other employees of the district attorney's office. Title 74 O.S. Supp. 2014, 935.2 (B). The record reflects SB 2120 (2014 Okla. Sess. Laws c. 419, § 2) amended HB 2630 to also exclude the following: any employees of a county, county elected officials, county hospital, city or town, conservation district, circuit engineering district, and any public or private trust in which a county, city or town participates and is the primary beneficiary.

turn to cover projected benefit obligations. These assumptions take into account items such as, unfunded and underfunded plan amendments, changes in investment yields, changes in mortality rates, experience losses, salary increases and employee turnover. *See* 1996 OK AG 21, ¶ 7. In essence, actuaries make an educated guess as to what the future will bring in order to advise the system on the level of funding needed to pay expected future benefits. Inherent in all defined benefit plans is a lack of certainty.

¶ 3 HB 2630 creates a new defined contribution system within OPERS. Title 74 O.S. Supp. 2014, § 935.2. Under a defined contribution plan there can never be an insufficiency of funds to cover promised benefits. *Hughes*, 525 U.S. at 439, 119 S.Ct. 755 (citations omitted). The obvious incentive for creating this new defined contribution system is its certainty and inability to be underfunded. Defined contribution plans provide an individual account for each participant and benefits are based solely upon the amounts contributed to the participants account and the earnings on those contributions. *Id.* As its name implies, the amount contributed is defined, however, the future benefit such an account will bring is unknown. The risk is shifted from the employer to the employee. In this new defined contribution system employees contribute between 3% to 7% of compensation and the employer shall match that contribution. Title 74 O.S. Supp. 2014, § 935.5. In addition, HB 2630 also requires employers making contributions on behalf of those employees in the new defined contribution system to make an additional contribution to the now closed defined benefit plan. Title 74 O.S. Supp. 2014, § 935.10 provides the amount of this contribution to the defined benefit plan will be equal to the difference between the employer contribution made to the defined benefit plan and the employer contribution made on behalf of the members in the new defined contribution system. The stated purpose for this contribution is to help "reduce the liabilities of the defined benefit pension plan." Title 74 O.S. Supp. 2014, § 935.10 (B). HB 2630 also requires each employer with employees participating in the new defined contribution system to pay an amount "to reimburse the cost of administra-

tion of the defined contribution system, as determined by the Board." Title 74 O.S. Supp. 2014, § 935.6 (E).

¶ 4 On October 24, 2014, the Plaintiffs/Appellants, Joe Stevens and Cecil Dooley (Appellants) filed their Petition for Declaratory and Supplemental Relief challenging the validity of HB 2630. The Appellants claimed they have both taxpayer standing as resident Oklahoma taxpayers and individual standing as vested members in the OPERS defined benefit plan to bring this action. The Appellants' prayer for relief requested HB 2630 be found void *ab initio* because it is unconstitutional and in violation of certain sections of the Oklahoma Pension Legislation Actuarial Analysis Act (62 O.S. § 3101–3114) (OPLAAA). They also requested the Defendants/Appellees Joseph A. Fox, Executive Director of the Oklahoma Public Employees Retirement System, Dewayne McAnally, Steve Paris, Michael D. Evans, Jill Geiger, James R. "Rusty" Hale, Thomas E. Kemp, Jr., Don Kilpatrik, Brian Maddy, Lucinda Meltabarger, Michael Moradi, Cleve Pierce and Frank Stone, as and constituting the Board Of Trustees of the Oklahoma Public Employees Retirement System (collectively, Appellees), be enjoined from enforcing HB 2630.

¶ 5 The Appellants asserted the Legislature violated OPLAAA when it enacted HB 2630. OPLAAA was enacted in 2006; 2006 Okla. Sess. Laws c. 292 (SB 1894). OPLAAA establishes legislative procedures for introducing, hearing, and passing retirement legislation. It provides separate legislative procedures for fiscal and non-fiscal retirement bills. Since 2007, it has been applicable to "retirement systems" defined in 62 O.S., § 3103 (9) as "the Teachers' Retirement System of Oklahoma, the Oklahoma Public Employees Retirement System, the Uniform Retirement System for Justices and Judges, the Oklahoma Firefighters Pension and Retirement System, the Oklahoma Police Pension and Retirement System, the Oklahoma Law Enforcement Retirement System, or a retirement system established after January 1, 2006." 2007 Okla. Sess. Laws c. 186, §§ 2-3; *see also* 62 O.S. 2011, § 3102.

¶ 6 OPLAAA requires the Legislative Service Bureau to contract with a firm or entity

to provide the actuarial services and duties under the Act. Title 62 O.S. 2011, § 3103. OPLAAA refers to this firm or entity as the "Legislative Actuary." It grants the Legislative Actuary authority to determine whether a proposed retirement bill is a fiscal retirement bill [3] or a non-fiscal retirement bill [4] and requires the Legislative Actuary to provide a written certification of that determination. Title 62 O.S. 2011, § 3105. The certification is attached to the original introduced bill and the whole process is a "condition precedent" to the introduction of any retirement bill.[5] *Id.*

¶ 7 Each party filed a motion for summary judgment. The Appellants' primary argument was the Legislature failed to follow the regulations it set for itself under OPLAAA and therefore HB 2630 is void. They alleged the Legislative Actuary incorrectly certified HB 2630 as being a non-fiscal retirement bill because it created a new retirement system and created or increased the costs, benefits, normal cost and actuarial accrued liability of OPERS.[6] This incorrect certification resulted in HB 2630 being passed by the Legislature using the wrong OPLAAA procedures. In addition, they argued HB 2630 unconstitutionally impaired the Appellants' retirement security rights in violation of Okla. Const. art. 2, § 15 [7] and Okla. Const. art. 5, § 54 [8] and certain funds were not used exclusively for the defined benefit members in violation

---

**3.** Title 62 O.S. 2011, § 3103 (8) defines a "[r]etirement bill having a fiscal impact" as "any retirement bill creating or establishing a retirement system and any other retirement bill other than a nonfiscal retirement bill."

**4.** Title 62 O.S. 2011, § 3103 (5) defines a "[n]onfiscal retirement bill" as:
[A] retirement bill which does not affect the cost or funding factors of a retirement system or a retirement bill which affects such factors only in a manner which does not:
a. grant a benefit increase under the retirement system affected by the bill,
b. create an actuarial accrued liability for or increase the actuarial accrued liability of the retirement system affected by the bill, or
c. increase the normal cost of the retirement system affected by the bill except as otherwise provided by subparagraph a of this paragraph. A nonfiscal retirement bill shall include any retirement bill that has as its sole purpose the appropriation or distribution or redistribution of monies in some manner to a retirement system for purposes of reducing the unfunded liability of such system or the earmarking of a portion of the revenue from a tax to a retirement system or increasing the percentage of the revenue earmarked from a tax to a retirement system.

**5.** OPLAAA also provides: Bills certified as being non-fiscal retirement bills may be introduced and proceed like any other legislation. Title 62 O.S. 2011, § 3106. Retirement bills certified as having a fiscal impact may only be introduced in an odd-numbered year and may only be passed in an even-numbered year. Title 62 O.S. 2011, § 3107. However, for unforeseen and emergency situations, retirement bills certified as having a fiscal impact may be introduced, considered and enacted in any odd-numbered year if three-fourths (¾) of the membership of each House votes to allow it to be considered. *Id.* A retirement bill certified as having a fiscal impact shall be assigned to a retirement committee and shall not be reported out of committee until a majority of the members of that committee vote to have an actuarial investigation conducted and such investigation has been made. *Id.* If the committee votes in favor of the investigation, the chair of the committee shall forward a copy of the bill to the Legislative Actuary. *Id.* The Legislative Actuary has until December 1 of that year to complete an actuarial investigation. Title 62 O.S. 2011, § 3109. Once the investigation is completed, the Legislature may then consider the bill at the next regular legislative session. Title 62 O.S. 2011, § 3110. If a retirement bill having a fiscal impact is enacted by the Legislature and approved by the Governor, it shall only be effective if concurrent funding was provided. Title 62 O.S. 2011, § 3111. If concurrent funding is not provided, even if "approved by the Governor," then the bill shall not become effective as law. *Id.* The enrolled act (final version) shall also have attached to it a copy of all certificates and summaries of actuarial investigations submitted by the Legislative Actuary. Title 62 O.S. 2011, § 3114.

**6.** The OPLAAA definition of "retirement bill having a fiscal impact" (62 O.S. 2011, § 3103 (8)), includes *a bill that creates a retirement system.* The OPLAAA definition of "nonfiscal retirement bill" (62 O.S. 2011, § 3103 (5)) excludes a bill that creates or increases costs, benefits, normal cost and/or actuarial accrued liability of a retirement system.

**7.** Okla. Const. art. 2, § 15 provides:
No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties.

**8.** Okla. Const. art. 5, § 54 provides:
The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall

of both Okla. Const. art. 23, § 12 [9] and the Internal Revenue Code Section 401 (a) (2) (26 U.S.C. § 401 (a) (2)).[10]

¶ 8 The Appellants asserted they have both taxpayer and individual standing. Their taxpayer standing argument is based on their challenge to an "alleged illegal expenditure of public funds." *Oklahoma Pub. Employees Ass'n v. Oklahoma Dep't of Cent. Servs.*, 2002 OK 71, ¶ 10, 55 P.3d 1072. Their individual standing argument is based on their vested status in the OPERS defined benefit plan which they claimed, pursuant to *Taylor v. State & Educ. Employees Grp. Ins. Program*, 1995 OK 51, 897 P.2d 275, gives them a cognizable interest in the actuarial soundness of their pension funds.

¶ 9 In Appellees' motion for summary judgment they argued OPLAAA (62 O.S. 2011, § 3105) grants the Legislative Actuary sole authority for determining whether a re-

tirement bill is fiscal or non-fiscal and his certification was correct for the following reasons: 1) OPLAAA's definition of "retirement system" (62 O.S. 2011, § 3103 (9)) is focused on the body corporate (OPERS) and not on the individual plans of a retirement system (defined contribution system); and 2) HB 2630 did not create or increase benefits, normal cost or actuarial accrued liability. They further contested the Appellants' basis for standing, asserting their alleged injuries are too speculative to invoke the district court's jurisdiction to issue a declaratory judgment (12 O.S. § 1651)[11] or to constitute an illegal expenditure of public funds. The Appellants have presently suffered no violation of any right and none of their pension benefits have been reduced or taken away by HB 2630's passage.

¶ 10 Lastly, the Appellees asserted even if the Legislature violated OPLAAA it presents

such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

**9.** Okla. Const. art. 23, § 12 provides:

All the proceeds, assets and income of any public retirement system administered by an agency of the State of Oklahoma shall be held, invested, or disbursed as provided for by law as in trust for the exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system, and shall not be encumbered for or diverted to any other purposes.

**10.** 26 U.S.C. § 401 (a) (2) provides:

(a) Requirements for qualification. A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section-
. . . .
(2)  if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries (but this paragraph shall not be construed, in the case of a multiemployer plan, to prohibit the return of a contribution within 6 months after the plan administrator determines that the contribution was made by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) or the trust which is part of such plan

is exempt from taxation under section 501(a), or the return of any withdrawal liability payment determined to be an overpayment within 6 months of such determination).

**11.** 12 O.S. 2011, § 1651 provides:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.
The Appellees cite *Dean v. State ex rel. Doak*, 2012 OK CIV APP 105, ¶ 12, 292 P.3d 58, which quotes the syllabus in *Gordon v. Followell*:
In order to invoke the jurisdiction of the court under the declaratory judgments act there must be an actual, existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute.

a non-justiciable controversy. The Appellees based their argument on the separation of powers doctrine and claimed OPLAAA is merely a legislative procedural statute created by the Legislature pursuant to its constitutional rulemaking powers (Okla. Const. art. 5, § 30).[12]

¶ 11 The trial court heard the motions for summary judgment on July 21, 2015, and filed a Journal Entry of Judgment on January 6, 2016. As to individual standing, it specifically found the Appellants had standing based upon their allegations HB 2630 adversely affected the actuarial soundness of the defined benefit plan. *Taylor v. State & Educ. Employees Group Ins. Program*, 1995 OK 51, 897 P.2d 275. The trial court determined that in order to obtain a declaratory judgment a plaintiff must establish (1) a justiciable controversy exists, (2) between persons whose interests are adverse, (3) plaintiff has a legal interest in the controversy, and (4) the issues are ripe for judicial review. *Knight v. Miller*, 2008 OK 81, ¶ 8, 195 P.3d 372. The trial court determined the issues were not ripe for judicial review. HB 2630 does not immediately threaten the actuarial soundness of the defined benefit system, unreasonably impair the contract rights of retired public employees and those eligible for retirement, and does not increase contributions or reduce the benefits of retired public employees or those eligible to retire. *Taylor*, 1995 OK 51 at ¶ 20, 897 P.2d 275. On the contrary, it found HB 2630 actually provided for continuing funding of the defined benefit plan by requiring employers to pay the difference in contributions to the defined benefit plan.

¶ 12 The trial court also held OPLAAA had not been violated. It first determined a new retirement system under 62 O.S. 2011, § 3103 (9) would have to provide retirement benefits to a new group of employees not covered by a current retirement system which did not occur here. It found HB 2630 did not immediately affect the costs or funding factors of OPERS, did not increase "retirement benefits" as the term is commonly understood, and did not immediately increase the actuarial accrued liability or normal cost of the defined benefit system. The trial court sustained the Appellees' motion for summary judgment and the Appellants filed their Petition in Error on February 4, 2016.

## STANDARD OF REVIEW

¶ 13 Summary judgment is a pretrial procedure available where there is no dispute as to the material facts and the inferences that may be drawn from the undisputed material facts and where the evidentiary materials establish each and every material fact necessary to support the judgment as a matter of law. *State ex rel. Pruitt v. Native Wholesale Supply*, 2014 OK 49, ¶ 11, 338 P.3d 613. An appeal on summary judgment comes to this Court as a *de novo* review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. This Court will affirm a correct judgment on any applicable theory. *See In re M.K.T.*, 2016 OK 4, ¶ 86, 368 P.3d 771.

## ANALYSIS

¶ 14 The Appellants' claims can be categorized as one individual standing claim and two taxpayer standing claims. The trial court

1964 OK 74, ¶ 0, 391 P.2d 242 (syl. No. 1 by the Court).

**12.** Okla. Const. art. 5, § 30 provides:
Each House shall be the judge of the elections, returns, and qualifications of its own members, and a majority of each shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent members, in such manner and under such penalty as each House may provide.
Each House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member.
Each House shall keep a journal of its proceedings, and from time to time publish the same. The yeas and nays of the members of either House on any question, at the desire of one-fifteenth of those present shall be entered upon its journal.
Neither House, during the session of the Legislature, shall, without the consent of the other, adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting.

in its Journal Entry of Judgment only addressed the individual standing claim and one taxpayer standing claim. In the Appellants' Brief in Chief they state they are no longer challenging HB 2630 as a constitutional impairment of Appellants' right to an actuarially sound retirement system. This was their claim based upon individual standing. They acknowledge, under OPLAAA no contractual rights are granted. Title 62 O.S. 2011, § 3113.[13] They also conclude, individual standing is unnecessary because they believe they have adequately demonstrated they have taxpayer standing. Therefore, we will focus on the Appellants' issues based upon taxpayer standing.

¶ 15 The Appellants' first taxpayer standing claim concerns an alleged illegal expenditure of public funds based upon a violation of OPLAAA. This claim was decided by the trial court. The Appellants' Brief in Chief states "this is a case about the legislature ignoring its own legal obligations as a mere matter of convenience." Their primary contention is the Legislature failed to comply with OPLAAA in passing HB 2630. The Appellants allege the trial court erred as a matter of law in finding there was no violation of OPLAAA and assert they have taxpayer standing to present their claims. In order to have taxpayer standing we have held "a taxpayer possesses standing to seek equitable relief when alleging that violation of a statute will result in illegal expenditure of public funds." *Thomas v. Henry*, 2011 OK 53, ¶ 6, 260 P.3d 1251. Here the alleged illegal act was the passage of HB 2630 in violation of OPLAAA's procedures. The alleged expenditure of public funds was largely based on speculation concerning future expenditures which may or may not occur as a result of HB 2630. However, the Appellants did provide some evidence of expenditures. They provided invoices from OPERS's attorneys concerning the new defined contribution system which they alleged is evidence of

start-up costs related to HB 2630. In addition, the Appellants point to the provisions of HB 2630 which require the OPERS employers to reimburse certain administrative costs related to the new defined contribution system. 74 O.S. Supp. 2014, § 935.6 (E). The Appellants assert, because this is a reimbursement, the assets of the defined benefit plan must have been used to pay those administrative costs up-front. It is not clear from the record if such administrative costs were ever actually paid, the amount of such costs or from what source such costs were or would have been paid.

¶ 16 The Appellants' arguments focus on whether HB 2630 violated OPLAAA. They allege HB 2630 violated OPLAAA because it was passed as a non-fiscal retirement bill rather than a fiscal retirement bill. The Appellants assert the Legislative Actuary's certification that HB 2630 was a non-fiscal retirement bill was incorrect because HB 2630 creates a new retirement system and, based upon the Appellants' independent analysis, its provisions affect OPERS's costs and funding factors in an unacceptable manner (62 O.S. 2011, § 3103 (5)).

¶ 17 The dispositive issue, however, rests on a matter of first impression, i.e., whether a violation of OPLAAA is justiciable. The Appellees assert a violation of OPLAAA is non-justiciable, relying on the separation of powers doctrine and asserting OPLAAA is merely a legislative procedural statute created by the Legislature pursuant to its constitutional rulemaking powers (Okla. Const. art. 5, § 30). The Appellees cite *Dank v. Benson*, 2000 OK 40, 5 P.3d 1088 for support. In *Dank* the Petitioner, a member of the Oklahoma House of Representatives, sought a declaratory judgment and writ of mandamus asking this Court to construe the phrase "read at length" found in Okla. Const. art. 5, § 34 to mean "reading each and every

---

**13.** Title 62 O.S. 2011, § 3113 provides:

No provision of the Oklahoma Pension Legislation Actuarial Analysis Act generally and no provision of Section 11 of this act in particular shall:
1. Create or be construed to create a contractual right to a retirement benefit or a contractual right in the provisions of a retirement system law which does not exist independently of the provi-

sions of the Oklahoma Pension Legislation Actuarial Analysis Act; and
2. Impair, alter, or diminish or be construed to impair, alter, or diminish a contractual right to a retirement benefit or a contractual right in the provisions of a retirement system law which exists independently of the provisions of the Oklahoma Pension Legislation Actuarial Analysis Act.

word of the bill proposed to be finally passed." *Dank v. Benson*, 2000 OK 40 at ¶ 3, 5 P.3d 1088. The Petitioner contested the House of Representatives internal procedures which did not always require a bill to be read at length. *Id.* This Court determined the Petitioner's action "necessarily implicates the constitutionally-committed authority of each House to adopt its own rules of internal procedure." *Id.* at ¶ 6. We noted the framers of our Constitution clearly intended a separation of powers between the executive, legislative and judicial branches of government. *Id.* We held "only under the most exigent circumstances are we to intercede in the internal affairs of a coordinate branch of government when it exercises a function ... committed to it by the Constitution." *Id.* This Court also determined Oklahoma's extant jurisprudence clearly delimits the Court's power over the Legislature, citing *Jones v. Freeman*, 1943 OK 322, ¶ 20, 193 Okla. 554, 146 P.2d 564, wherein we held:

> The Legislature, being a co-ordinate branch of the government, may not be compelled by the courts to perform a legislative duty, even though the performance of that duty be required by the Constitution.

This Court ultimately did not find the Petitioner's action justiciable because it did not deal with a specific piece of legislation and only concerned a hypothetical situation. *Id.* at ¶¶ 7–10.

¶ 18 The Appellees also cite as persuasive authority a decision from another jurisdiction with a similar issue. In *Board of Trustees of Judicial Form Retirement System v. Attorney General of the Commonwealth of Kentucky*, 132 S.W.3d 770 (Ky. 2003), the Supreme Court of Kentucky ruled on a statute which contained similar restrictions as those contained in OPLAAA (KRS 6.350). KRS 6.350 prohibits a retirement bill from being reported out of a legislative committee if it increases benefits and is not accompanied by an actuarial analysis. *Board of Trustees of Judicial Form Retirement System*, 132 S.W.3d at 776. The Attorney General of Kentucky determined House Bill 389 (4), which sought to increase legislative retirement benefits, was void because it was enacted without obtaining the required actuarial analysis. *Id.* The Supreme Court of Kentucky held KRS 6.350 was procedural in nature and had no constitutional implications. *Id.* at 777. The Court determined "[s]o long as those rules do not violate some other provision of the Constitution, it is not within our prerogative to approve, disapprove, or enforce them." *Id.* It noted that while the separation of powers doctrine prohibited it from telling the general assembly what system or rules to enact, it retained jurisdiction to determine whether such systems violated any constitutional mandates. *Id.* The Supreme Court of Kentucky ultimately found KRS 6.350 had not been violated because an actuarial analysis had been obtained concerning another failed piece of legislation which dealt with the same issue that session. *Id.* at 778. The analysis the Supreme Court of Kentucky undertook is useful to our present case.[14]

---

14. The Court noted the issue was one of first impression and its analysis relied heavily on decisions from other jurisdictions. The Court quoted *Des Moines Register & Tribune Co. v. Dwyer*, 542 N.W.2d 491, 496 (Iowa 1996), wherein the Supreme Court of Iowa held:

It is entirely the prerogative of the legislature, however, to make, interpret, and enforce its own procedural rules, and the judiciary cannot compel the legislature to act in accordance with its own procedural rules so long as constitutional questions are not implicated. Furthermore, the legislature has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure, and violations of such rules are not grounds for the voiding of legislation.

*Board of Trustees of Judicial Form Retirement System v. Attorney General of the Commonwealth of Kentucky*, 132 S.W.3d 770, 778 (Ky. 2003). (Emphasis added).

It also cited decisions from several other jurisdictions: *Abood v. League of Women Voters*, 743 P.2d 333, 336-37 (Alaska 1987) (review of the legislature's adherence to its own procedural rules constitutes a nonjusticiable political question solely within the legislature's province, and non-adherence to rules does not implicate constitutional rights); *State v. Gray*, 221 La. 868, 60 So.2d 466, 468 (1952) (legislature's failure to observe procedural rules does not invalidate legislation); *State ex rel. La Follette v. Stitt*, 114 Wis.2d 358, 338 N.W.2d 684, 687 (1983) (Courts are reluctant to inquire into whether the legislature has complied with legislatively prescribed formalities in enacting a statute. This reluctance stems from separation of power and comity concepts, plus the need for finality and certainty regarding the status of a statute.).

¶ 19 The Appellants contend OPLAAA is not merely an internal procedure of the legislature because: 1) it requires a copy of the certification and/or actuarial analysis be attached to the enrolled bill; and 2) it forbids a retirement bill having a fiscal impact without concurrent funding from taking effect, even if passed by the Governor. The Appellants assert OPLAAA's requirements are therefore both substantive and enforceable and not merely procedural.

¶ 20 As to the Appellants' first contention, the required attachment of the actuarial certification to the enrolled bill does not change the procedural nature of OPLAAA. Title 62 O.S. 2011, § 3114 provides:

The enrolled act resulting from a bill which is subject to the legislative procedures provided by the Oklahoma Pension Legislation Actuarial Analysis Act shall have attached thereto the original or a true and correct copy of all certificates and summaries of actuarial investigations submitted by the Legislative Actuary pursuant to the requirements of the Oklahoma Pension Legislation Actuarial Analysis Act.

OPLAAA requires the attachment of the actuarial certification to follow through the entire legislative process. See 62 O.S. 2011, §§ 3105, 3109, and 3110. The obvious intent and purpose behind the actuarial certification is to provide actuarial information to the Legislature. We find no precedent concerning attachments to enrolled bills. This characteristic appears unique to OPLAAA. The actuarial certification is not contained in the four corners of the enrolled bill. It is neither codified nor does it appear as a non-codified law or receive any mention in the Oklahoma Session Laws (2014 Okla. Sess. Laws c. 375). It simply does not become law. The mere fact the certification is attached to the enrolled bill does not change OPLAAA's procedural nature nor our observance of the Legislature's constitutional powers for creating its own rules of procedure (Okla. Const. art. 5, § 30).

¶ 21 The Appellants' second contention, that OPLAAA forbids a retirement bill having a fiscal impact without concurrent funding from taking effect even if passed by the

Governor, was also asserted to show OPLAAA was not merely procedural in nature. This argument is based on the provisions of 62 O.S. 2011, § 3111 (A) which provide in pertinent part:

If an enacted bill, including one approved by the Governor, is not concurrently funded as required by this section, then such bill shall not become effective as law.

Two provisions of OPLAAA appear to contain more than mere legislative procedure. Section 3111 (above) as well as parts of 62 O.S. 2011, § 3112 which requires the State Board of Equalization to make certain determinations and requires information be provided by executive branch agencies, affect more than just the Legislature and are not merely legislative procedure. However, the issue before us is based on the Legislative Actuary's certification. The Appellants' arguments stem from an assertion the certification was incorrect. The bulk of OPLAAA's fourteen sections, including those concerning the Legislative Actuary's certification, are codified legislative procedure. The fact that some portions of OPLAAA may be more than legislative procedure does not alter our determination that OPLAAA is procedural in nature especially as it pertains to the effect of the Legislative Actuary's certification.

¶ 22 The pertinent provisions of OPLAAA relevant to this action are part of a codified set of legislative procedures. These codified procedures amount to self-imposed limitations on how retirement legislation is presented and passed during the legislative process. The result is the same if the legislative procedure is adopted by rule or if it is codified. Board of Trustees of Judicial Form Retirement System, 132 S.W.3d at 777. These procedures require certain actuarial information be provided concerning a retirement bill, require this information to follow the bill, and prohibit a retirement bill's continuation through the legislative process if certain conditions are not met. Here, the Legislature obtained the required actuarial certification, thus complying with its own procedures. The Appellants challenge the correctness of the Legislative Actuary's cer-

tification. The accuracy of an actuarial certification and investigation required under OPLAAA does not implicate any provision of the Oklahoma Constitution. The information provided by the Legislative Actuary is meant to inform the members of the Legislature about the fiscal impact of a proposed retirement bill. The sufficiency of the Legislative Actuary's certification is purely a legislative concern the province of which this Court will not invade. We hold a violation of OPLAAA, as alleged in this matter, is non-justiciable and cannot be the basis for finding an illegal expenditure of public funds. We affirm the trial court's granting of summary judgment on this issue.

¶ 23 The Appellants also raised a second taxpayer claim. They assert HB 2630 violated Okla. Const. art. 23, § 12 as well as Internal Revenue Code § 401 (a) (2) (26 U.S.C. § 401 (a) (2)). This claim is independent of any claims related to OPLAAA. The Appellants assert money used to establish the defined contribution system and up-front administrative costs under HB 2630 had to come from the OPERS defined benefit plan assets and were therefore not used for the exclusive benefit of the defined benefit plan members.[15] Their argument amounts to a

taxpayer claim concerning an illegal expenditure of public funds. As the Appellants note, the trial court did not address this issue in the Journal Entry of Judgment even though the Appellants presented their argument to the trial court. This Court will not exercise appellate jurisdiction to make first instance determinations on disputed questions of fact or law. *Oklahoma Public Employees Association v. Oklahoma Dept. of Central Services*, 2002 OK 71, ¶ 21, 55 P.3d 1072 (citing *Martin v. Johnson*, 1998 OK 127, 975 P.2d 889, 897). Because the trial court did not previously adjudicate this issue we remand this matter to the trial court for further proceedings.

**THE DECISION OF THE TRIAL COURT IS AFFIRMED AND THIS CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**

ALL JUSTICES CONCUR

---

15. *See* ¶ 15 of this Opinion.