2017 OK 34

The OSAGE NATION, Plaintiff/Appellant

and

The Osage Minerals Council, Plaintiff,

v.

BOARD OF COMMISSIONERS OF OS-AGE COUNTY, Oklahoma; Board of Adjustment of Osage County; and Osage Wind LLC, Defendants/Appellees.

The Osage Nation, Appellant,

and

The Osage Minerals Council, Plaintiff,

v.

Osage County Board of Adjustment, Appellee,

and

Osage Wind, LLC, Intervenor.

No. 113414, No. 113415

Supreme Court of Oklahoma.

Decided: 05/02/2017

As Amended May 4, 2017

John W. Moody, Tulsa, Oklahoma for Appellant, Osage Nation.

R. Tom Hillis, Assistant District Attorney of Osage County, Pawhuska, Oklahoma, for Defendants/Appellees Osage County Board of Adjustment and Board of Commissioners of Osage County.

Joel L. Wohlgemuth and Ryan A. Ray, Norman Wohlgemuth Chandler Jeter Barnett & Ray, Tulsa, Oklahoma, for Defendant, Osage Wind, LLC.

EDMONDSON, J.

¶ 1 The District Court of Osage County had three related but distinct proceedings before it involving wind farms in Osage County, and orders in each of the three were appealed to this Court.[1] One of the appeals was adjudicated by our recent opinion in *Mustang Run Wind Project, LLC v. Osage County Board of Adjustment*, 2016 OK 113, 387 P.3d 333. The remaining two appeals arise from a single journal entry of judgment which adjudicated claims in two District Court proceedings, and we address those two appeals by a single appellate opinion.

---

1. Mustang Run Wind Project v. Osage County Board of Adjustment and the Osage Nation, CV-2014-34 (Okla. Sup. Ct. No. 113,463); The Osage Nation and the Osage Minerals Council v. Board of Commissioners of Osage County, Board of Adjustment of Osage County and Osage Wind, LLC, CV-2014-36 (Okla. Sup. Ct. No. 113,415); and The Osage Nation and the Osage Minerals Council v. Board of Commissioners of Osage County, Board of Adjustment of Osage County and Osage Wind, LLC, CV-2014-41 (Okla. Sup. Ct. No. 113,414).

¶ 2 The first appeal, Okla. Sup. Ct. No. 113,414, arises from a journal entry of judgment adjudicating claims made in Osage County case CV-2014-41. The Osage Nation and the Osage Minerals Council filed a proceeding in the District Court for Osage County and requested declaratory and injunctive relief against the Board of Commissioners of Osage County, the Board of Adjustment of Osage County, and Osage Wind, LLC. Plaintiffs' request for relief was based upon an allegation defendants Board of Commissioners and Board of Adjustment had created an "unlawful authorization of wind energy facilities in Osage County."[2] The Board of County Commissioners and Board of Adjustment filed a combined motion to dismiss. Osage Wind, LLC, filed a separate motion to dismiss.

¶ 3 When responding to these motions the plaintiffs summarized their position and stated that "neither Osage County law nor State of Oklahoma law authorize the Board of Adjustment of Osage County ("Board of Adjustment") to issue a Conditional Use Permit ("CUP") for a wind energy facility in Osage County."[3] Plaintiffs argued the Legislature created five different statutory schemes for counties to enact zoning regulations and the authority for creating conditional use permits was not granted to counties. Plaintiffs also argued sections 1.7.1, 2.1.2, and 6.5.2 of the Osage County zoning ordinances do not allow a conditional use permit. They argued the Osage County Wind Energy Ordinance was improperly created due to an alleged deficient public notice.

¶ 4 The second appeal, Okla. Sup. Ct. No. 113,415, is brought by the Osage Nation from adjudicated claims made in Osage County case, CV-2014-36. This appeal was prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the appellate briefs and the assignments of error on appeal are those listed in an appellant's petition in error. [4] The Osage Nation's petition in error in this Court classifies this District Court proceeding as an appeal from a decision of the Osage County Board of Adjustment.

¶ 5 The petition in error alleges: (1) Appellant could prove facts in support of its claim and dismissal for failure to state a claim was improper; (2) Appellant was entitled to a trial de novo on an appeal from a board of adjustment; (3) Disputed facts were raised by the motions to dismiss, and the motion to dismiss should have been converted to summary judgment and appellant provided an opportunity to respond; (4) Appellant possessed a statutory right to challenge the decision of the board of adjustment; (5) Counties possess zoning powers only when granted by the Legislature; (6) 19 O.S. 2011 866.23 does not give authority to Osage County the to adopt a zoning ordinance empowering the Board of Adjustment to approve special use permits or conditional use permits; (7) A trial de novo was required to determine whether Osage County Zoning Ordinance, 6.5.2, was valid and constitutional as measured against 19 O.S. 2011 866.23; (8) Zoning Ordinance 6.5.2 is void ab initio because it authorizes the board of adjustment to issue conditional use permits; (9) The Board of Adjustment had no authority to approve a conditional use permit for a wind generating facility; (10) Sections of Oklahoma Statutes, Title 11, giving authority to municipalities to pass zoning ordinances and authorizing a board of adjustment to grant conditional use permits do not authorize a county board of adjustment to issue such permits; (11) Issues precluded by the previous litigation in federal court should not

---

2. Petition for Declaratory Judgment and Petition for Permanent Injunction, Appellant's Record, Tab 2, p. 1 (Dec. 8, 2014, No. 113,414).

3. Osage Nation's and Osage Minerals Council's Response in opposition to Osage Wind, LLC's motion to dismiss, Tab 5 p. 1, and Osage Nation's and Osage Minerals Council's Response in opposition to motion to dismiss filed by Osage County Board of Commissioners and Board of Adjustment, Tab 7, p. 1 (Appellant's Record, Dec. 8, 2014). See also Osage Nation's Petition for Declaratory Judgment and Petition for Permanent Injunction, Appellant's Record, Tab 2, Second Cause of Action for Declaratory Judgment, pp. 12–14 (Dec. 8, 2014, No. 113,414).

4. *American Natural Resources, LLC v. Eagle Rock Energy Partners, LP*, 2016 OK 67, ¶ 19, 374 P.3d 766, 772 (In appeals brought under Supreme Court Rule 1.36 when no briefs are filed the review of alleged errors in the trial court is limited to issues raised by the petition in error).

prevent an appeal from a board of adjustment; and (12) Issue preclusion and laches do not bar an appeal from a decision of a board of adjustment when the board acts outside its jurisdiction by issuing a conditional use permit. The District Court held a hearing to simultaneously address the pending District Court proceedings involving these parties, and dismissed both cases by a single journal entry of judgment after hearing arguments from counsel. The filed judgment first addressed the motion to dismiss and the sufficiency of the petition in CV-2014-41.

¶ 6 The District Court determined the Osage Nation's 2014 legal challenge seeking declaratory and injunctive relief came too late to attack a conditional use permit granted to Osage Wind in 2011, and the challenge was barred by laches. The trial court stated "all of the alleged legal infirmities in the Petition for Declaratory Judgment fail as a matter of law on their merits." The trial court also determined the Osage Nation and the Osage Minerals Council lacked standing to prosecute the claims raised because these parties "litigated the issue of the Osage Wind energy project's interference with their mineral estate in the United States District Court for the Northern District of Oklahoma ... and lost that issue on the merits ... [and] they are accordingly precluded by the doctrines of claim preclusion and issue preclusion from relitigating that finding of fact in this proceeding." The trial court determined other issues raised by plaintiffs were insufficient to confer standing "because they fail to demonstrate an injury in fact to a legally protectable interest of the Osage Nation or the Osage Minerals Council."

¶ 7 The judgment then addressed CV-2014-36 and dismissed it because (1) all of the grounds in support of dismissal in CV-2014-41 also supported dismissal in CV-2014-36, and (2) the claims of the plaintiffs were barred by a ten-day statute of limitations for appeals of decision of boards of adjustment in 19 O.S. 865.64. No order consolidating the two cases in the trial court appears in either of the appellate records in this Court, and we

have treated them as companion cases for the purpose of appellate review.

> I. Okla. Sup. Ct. No. 113,415, Board of Adjustment Appeal (No. CV-2014-36).

¶ 8 In May 2014, the Osage Nation filed in the District Court a "Notice of Appeal." This Notice states appellant's "do hereby appeal the decision of the Board of Adjustment of the County of Osage, Oklahoma, rendered on May 8, 2014, denying Appellant's Petition to the Board of Adjustment to Rescind the Wind Capital Energy Project Variance rendered in Case No. CUP-2012-01 and Prohibit Construction at the Project Site Until the Board Properly Authorizes the Project (the "Petition") to the District Court of Osage County, State of Oklahoma." Osage Wind, LLC, filed a motion to intervene in the District Court proceeding.

¶ 9 During the trial court hearing the Osage Nation argued the conditional use permit approved for Osage Wind, LLC, in a 2011 Board of Adjustment hearing was void because the Board did not possess authority to issue such a permit, and this alleged jurisdictional flaw had legal consequences of: (1) negating the ten-day statutory limit for filing a Board of Adjustment appeal to the District Court, (2) providing the Osage Nation an opportunity to file an appeal in the District Court from the Board's decision and thereby challenge the underlying three-year-old decision of the Board which issued the permit, and (3) providing the Osage Nation with an opportunity to file a petition to vacate the permit with the Board and then appeal that decision to the District Court.

¶ 10 In 1995, we explained when an order is "utterly void on its face" this attribute does not change or alter the time for appealing that order: "One cannot justify postponing an appeal by one's good-faith belief in the decision's invalidity. Mandatory appeal time applies to orders, whether valid or infirm."[5] A municipal board of adjustment exercises quasi-judicial power when granting a variance,[6] and the statutory requirements for perfecting an appeal from a municipal

---

**5.** *Stites v. DUIT Const. Co., Inc.*, 1995 OK 69, 903 P.2d 293, 298.

**6.** *Banks v. City of Bethany*, 1975 OK 128, 541 P.2d 178, 180 ("The Board is an administrative

board of adjustment are mandatory.[7] A county board of adjustment deciding to issue a conditional use permit also exercises a quasi-judicial power.[8] An appeal from a county board of adjustment's decision to a District Court is required by 19 O.S.2011 865.64 to be brought within ten days.[9]

¶ 11 In the related case of *Mustang Run Wind Project, LLC v. Osage County Board of Adjustment*, 2016 OK 113, 387 P.3d 333, we observed "the materials presented in the appellate record appear to show the existence of a cooperative municipal and county planning commission, i.e., "Pawhuska–Osage County Planning Area Commission" which regulates zoning in all of Osage County" and we applied the City-County Planning and

Zoning Act, 19 O.S. 2011 866.1–866.35.[10] This Act also contains a similar ten-day requirement for an appeal from a Board of Adjustment to a District Court: 19 O.S.2011 866.24.[11]

¶ 12 A statutory time limit for commencing an appeal has been historically viewed as jurisdictional in nature [12] and beyond a court's power to alter in the absence of an applicable constitutional requirement.[13] The oral request for dismissal of the appeal in the District Court was based, in part, upon the jurisdictional requirement of 19 O.S.2011 866.24, Notice of Appeal in the District Court, and the filings made with the Board of Adjustment which had been filed in the District Court.

---

board with quasi-judicial power to determine if the facts submitted by the petitioner warrant a variance.").

7. *Hargrave v. Tulsa Board of Adjustment*, 2002 OK 73, ¶ 9, 55 P.3d 1088, 1092 (the statutory requirements for perfecting an appeal from a decision of a municipal board of adjustment to the district court, set forth in 11 O.S.2001 44-110, are mandatory).

8. *Mustang Run Wind*, 2016 OK 113, ¶ 30, 387 P.3d 333.

9. 19 O.S.2011 865.64:

An appeal to the district court from any decision, ruling, judgment, or order of said county board of adjustment may be taken by any person or persons, firm or corporation, jointly or severally, aggrieved thereby, or any department, board or official of government by filing with the clerk of said board within ten (10) days a notice of such appeal. No bond shall be required for such appeal, but costs may be required in the district court as in other cases. Upon filing of such notice, the clerk of said board shall forthwith transmit to the clerk of the district court the originals or certified copies of all papers constituting the record in such case, together with the order, judgment or decisions of said board. Said cause shall be tried de novo in the district court and said court shall have the same power and authority as the county board of adjustment, together with all other powers of the district court in law or in equity. An appeal to the Supreme Court from the decision of the district court shall be allowed as in other cases.

10. *Mustang Run Wind Project, LLC v. Osage County Board of Adjustment*, 2016 OK 113, ¶ 5, 387 P.3d at 337–338.

11. 19 O.S.2011 866.24:

An appeal to the District Court from any decision, ruling, judgment, or order of said County Board of Adjustment may be taken by any person or persons, firm or corporation, jointly or severally, aggrieved thereby, or any department, board or official of government by filing with the clerk of said Board within ten (10) days a notice of such appeal. No bond shall be required for such appeal, but costs may be required in the District Court as in other cases. Upon filing of such notice, the clerk of said Board shall forthwith transmit to the clerk of the District Court the originals or certified copies of all papers constituting the record in such case, together with the order, judgment or decisions of said Board. Said cause shall be tried de novo in the District Court and said Court shall have the same power and authority as the County Board of Adjustment, together with all other powers of the District Court in law or in equity. An appeal to the Supreme Court from the decision of the District Court shall be allowed as in other cases.

12. *See, e.g., In re Survey of Section 30, Township 19, Range 20, Dewey Cnty.*, 1916 OK 1064, 60 Okla. 1, 159 P. 357, 359 (Rev. Laws 1910 1721, provided mandatory and jurisdictional requirements when authorizing appeal to District Court by a person aggrieved by county surveyor's report and requiring appellant to file notice of intention to appeal with the county surveyor and bond with court clerk within thirty days after the report was filed), quoting *Vowell v. Taylor*, 1899 OK 84, 8 Okla. 625, 58 P. 944, 945 ("An appeal is purely a statutory privilege, and is not a matter of right. It is only by complying with the statutory requirements that one becomes entitled to the privilege of an appeal. . . .").

13. *See, e.g., Larry Jones Intern. Ministries, Inc. v. Means*, 1997 OK 125, 946 P.2d 669 (Due Process required notice to taxpayer of board's decision adjudicating taxpayer's protest for commencing statutory time to appeal).

¶ 13 When applying a mandatory time limit for commencing an appeal we have used language describing this issue as jurisdictional and apart from issues on the merits of the controversy or appeal.[14] Resolution of the issue whether the jurisdictional ten-day requirement in 866.24 bars a 2014 *appeal of the three-year-old permit* does not thereby require resolving any substantive issue plaintiffs raised in their CV-2014-36 challenge to the permit, and the 866.24 jurisdictional issue is not intertwined with the merits of the controversy.[15] We may adjudicate the jurisdictional issue without involving the merits of appellant's challenges.

¶ 14 Some motions may be made orally pursuant to 12 O.S. 2007.[16] Applying a similar procedural rule in federal courts allows an oral motion when the substance of a motion and its context show that advance notice of the motion should not be required.[17]

■ ¶ 15 A photocopy of the docket in No. CV-2014-36 shows no filings for either a motion to dismiss or a response to a motion to dismiss. The Board of Adjustment record transmitted to the District Court contains no motion to dismiss or other document challenging the appellant's petition to vacate. On the record before us, a request for dismissal was made during the trial court hearing by oral argument applying mandatory statutory language for a timely appeal to a District Court.

¶ 16 The record on appeal in CV-2014-36 includes the transcript of the District Court hearing, the Notice of Appeal filed in the District Court with photocopies of documents filed with the Board of Adjustment, and the judgment of the District Court. The District Court granted an oral motion to dismiss the appeal, that is, to dismiss *the petition to vacate filed with the Board of Adjustment then pending before the trial court for de novo review. This petition does not appear in any form in the appellate record* for Okla. Sup. Ct. No. 113,415. The trial transcript in the appellate record shows participation by counsel for appellant at the hearing with no objection to the procedure used by the trial court.

■ ¶ 17 First, matters not first presented to the trial court for resolution are generally not considered on appeal.[18] Secondly, issues relating to lack of notice are usually considered to be waived when a party participates in the trial court proceedings without objecting or asking for a continuance.[19]

14. *State ex rel. Oklahoma Bd. of Medical Licensure and Supervision v. Pinaroc*, 2002 OK 20, ¶ 1, 46 P.3d 114, 115–116 ("This matter is before us on a *sua sponte* inquiry into our appellate jurisdiction prior to a disposition on the merits of the appeal."); *McSpadden v. Mahoney*, 1964 OK 260, 402 P.2d 656, 661 (Court concluded appeal was timely filed, denied the motion to dismiss, and ordered the case to proceed with briefing on the merits of the controversy). *Cf. State ex rel. Bd. of Regents of University of Oklahoma v. Lucas*, 2013 OK 14, ¶ 7, 297 P.3d 378, 383 ("claim based upon a lack of jurisdiction is usually considered to be a claim not affecting the merits of the controversy.").

15. *State ex rel. Bd. of Univ. of Okla. v. Lucas*, 2013 OK 14, ¶¶ 8–9 & n.9, 297 P.3d 378, 384 (a jurisdictional issue is intertwined with a merits when jurisdiction is dependent upon a issue that is also an element to the merits of the cause of action, and the adjudication of the jurisdictional issue necessarily adjudicates an element to a cause of action or defense thereto).

16. *Campbell v. Campbell*, 1994 OK 84, 878 P.2d 1037, 1040 ("Case law also holds that oral motions are acceptable in this jurisdiction.").
 12 O.S. 2011 2007(B)(1): "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."

17. *Meriwether v. Coughlin*, 879 F.2d 1037, 1042 (2d Cir.1989) ("Because the oral motion was made in open court, Rule 7(b) applies and written support was not necessary."); *Taragan v. Eli Lilly & Co.*, 267 U.S.App.D.C. 387, 838 F.2d 1337, 1340–1341 (D.C.Cir.1988) (one purpose of Federal Rule 7(b) (1) is to create a clear history of a litigation for the parties, later litigants, and reviewing courts); 5 Wright & Miller, *Federal Practice and Procedure: Civil* 1193, at 40–41 (1969) (orders issued upon some types of oral motions may be invalid for lack of notice).

18. *Lee v. Bueno*, 2016 OK 97, n. 7, 381 P.3d 736, 749, citing *Stonecipher v. Dist. Ct. of Pittsburg County*, 1998 OK 122, 970 P.2d 182; *Steiger v. City National Bank of Tulsa*, 1967 OK 41, ¶ 24, 424 P.2d 69.

19. *Towne v. Hubbard*, 2000 OK 30, ¶ 18, 3 P.3d 154, 162.

Thirdly, this appeal is prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the briefs on appeal, no legal authority in support of appellant's argument is part of the appellate record except that made in the trial court hearing, no Rule 1.36(g) motion for leave to submit appellate briefs was made, and propositions relating to trial court error are deemed waived when unsupported by authority on appeal.[20]

¶ 18 These three principles apply to all of appellant's assignments of error on this appeal which involve objections to the trial court procedure, none of which was raised in the trial court hearing according to the partial transcript provided to us, and thus none is preserved in the appellate record in this Court.

¶ 19 Appellant's Notice of Appeal, Board of Adjustment filings, and the trial transcript are sufficient to facially show the existence of a 2014 proceeding before the Board of Adjustment with a subsequent 2014 appeal to the District Court which came too late to appeal a decision by the Board three years earlier, 19 O.S. 866.24. The District Court's dismissal of the 2014 appeal as an appeal from the 2011 decision is affirmed.

¶ 20 Plaintiffs also argued their proceeding before the Board of Adjustment and subsequent District Court appeal was in the nature of a timely petition to the Board to vacate its earlier decision and not simply an appeal of the three-year-old permit. In the hearing, plaintiffs argued that they could seek a petition to vacate before the board because (1) no county board of adjustment possessed statutory power to issue a conditional use permit and the previously issued permit was void for this reason, (2) certain sections of the Osage County Zoning ordi-

nances were alleged to be invalid, and (3) filing a petition to vacate with a board of adjustment was authorized in Texas by an unnamed appellate opinion from that State. Appellant's assignments of error including those relating to challenges to zoning ordinances and the role of a board of adjustment are not subject to review in this appeal as we now explain.

¶ 21 In an appeal from a board of adjustment to a District Court, the record before the board is transmitted to the clerk of the District Court and the cause is tried *de novo* in the District Court where that court "shall have the same power and authority as the County Board of Adjustment, together with all other powers of the District Court in law or in equity."[21] This trial *de novo* is a complete examination of law and fact utilizing, at a minimum, the record presented to the board of adjustment that is transmitted and filed in the District Court. Appellant's assignments of error address the role and authority of a board of adjustment. An appellate record showing the facts presented to the board and then the District Court is important for appellate review because (1) a board of adjustment's exercise of quasi-judicial power does not include a challenge to the constitutional validity of a zoning ordinance, but the reasonableness of a property owner's request *based upon the evidence before the board*;[22] and (2) the nature of a District Court appeal being a trial *de novo* in the nature of an equitable proceeding will often be based upon the factual circumstances presented to the court.[23]

¶ 22 The District Court granted a motion to dismiss, a motion which tests the

**20.** *Logan County Conservation District v. Pleasant Oaks Homeowners Association,* 2016 OK 65, ¶ 25, 374 P.3d 755, 765. *See also Worsham v. Nix,* 2006 OK 67, ¶ 28, 145 P.3d 1055, 1064 (failure to brief an issue with authority is a waiver of an assignment of error relating to that issue).

**21.** 19 O.S.2011 866.24, at note 11, *supra.*

**22.** *O'Rourke v. City of Tulsa,* 1969 OK 112, 457 P.2d 782, 785 (A board of adjustment has no power to test the constitutional validity of a zoning ordinance.); *Mustang Run Wind Project, LLC v. Osage County Bd. of Adjustment,* 2016 OK 113,

¶¶ 30, 33, and 37, 387 P.3d 333, 345–347 (the exercise of quasi-judicial power possessed by a board of adjustment is to determine the reasonableness of a property owner's request based upon applying evidence of the circumstances before the board to the applicable zoning ordinances, and does not include authority to rewrite zoning ordinances or determine if a particular use of property is beneficial to the community).

**23.** *Mustang Run Wind Project,* 2016 OK 113, ¶ 23, 387 P.3d at 343.

law that governs the claims in the petition.[24] This adjudication of an issue of law requires facts to be present in a certain form, a pleading, which is part of an appellate record and reviewed in an appeal from the dismissal order. The typical standard for reviewing a judgment granting a motion to dismiss requires the appellate court to perform the following.

> ... the court examines only the controlling law, not the facts. Thus, the court must take as true all of the challenged *pleading's allegations* together with all reasonable inferences that can be drawn from them. Motions to dismiss are generally disfavored and granted only when there are no facts *consistent with the allegations* under any cognizable legal theory or there are insufficient facts under a cognizable legal theory.

*American Natural Resources, LLC v. Eagle Rock Energy Partners, LP*, 2016 OK 67, 374 P.3d 766, 769 (emphasis added), citing *Darrow v. Integris Health, Inc.*, 2008 OK 1, 7, 176 P.3d 1204, 1208.

Appellate review of an order granting a motion to dismiss as described in *American Natural Resources*, requires an appellate court to *examine the allegations of the pleadings.*

¶ 23 In this appeal, the Court does not have any document from the 2014 Board of Adjustment proceeding except for the Notice of Appeal. Two post-permit documents appear in the Board of Adjustment record that was submitted to this Court. One is a letter from the Pawhuska Osage County Area Planning Commission stating the project is outside any designated flood hazard areas. The second is a letter dated October 25, 2013, sent to the Pawhuska Osage County Area Planning Commission from Osage Wind. The letter states construction work has commenced on-site following a transmission network upgrade and on an electrical substation for the project, and that the total amount spent on this work to date exceeded fifty-three million dollars ($53,000,000.).

¶ 24 *Appellant's petition to vacate filed with the Board of Adjustment and the Board's decision on that petition are not in the appellant's record provided to this Court.* The appellate record in appeal No. 113,415 contains no formal *pleading* filed in the District Court in CV-2014-36, except a notice of appeal and certain documents marked "File # 1 from the Osage County Board of Adjustment." The Court has no document before it in appeal No. 113,415 to assess either (1) the sufficiency of any pleadings, petition or otherwise, or (2) the legal sufficiency of non-incorporated evidential materials if the judgment in CV-2014-36 had the legal effect of an order granting summary judgment.[25]

 ¶ 25 These circumstances require us to deny appellate review on issues which require examination of documents that are not in the appellate record. Legal error may not be presumed from a silent appellate record, and absent a record affirmatively showing error this Court presumes that the trial court did not err.[26] Appellant does not appear to suffer any prejudice by this result because the substance of the allegations raised in the petition to vacate appears to have been raised by appellant in CV-2014-41, and the District Court's disposition of the substance of those claims is before us in the companion appeal from CV-2014-41, No. 113,414.[27]

**24.** *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894.

**25.** *Cf. Tucker v. Cochran Firm–Criminal Defense Birmingham L.L.C.*, 2014 OK 112, ¶ 30, 341 P.3d 673, 684–685 (A motion to dismiss for failure to state a claim upon which relief may be granted, as provided by 12 O.S.2001 2012(B)(6), is to be treated as a motion for summary judgment when matters outside of the pleadings (including non-incorporated exhibits) are presented in support of the motion and those extra-pled matters are not excluded by the trial court when the motion is considered.); *Nelson v. Enid Medical Associates*, 2016 OK 69, 376 P.3d 212, 216 ("The standard for appellate review of a summary judgment is *de novo* and an appellate court makes an independent and nondeferential review testing the legal sufficiency of the evidential materials used in support and against the motion for summary judgment.").

**26.** *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496, 497 (appeal dismissed because appellate record presents nothing for our review).

**27.** The appellate record in Okla. Sup. Ct. No. 113,414, contains a copy of a motion to dismiss filed by Osage Wind and attached as an exhibit to the motion is a document uncertified by either

¶ 26 The judgment of the District Court in Osage County No. CV-2014-36, the appeal from the Board of Adjustment, is affirmed.

## II. Okla. Sup. Ct. No. 113,414, Petition for Declaratory and Injunctive Relief (No. CV-2014-41).

### A. Injunctive Relief and Laches

¶ 27 The District Court's judgment states the face of appellant's petition shows Osage Wind had already begun constructing the wind energy project and Plaintiffs' request for relief was brought nearly three years after the project was approved by the Board of Adjustment. The petition states the County has issued permits and/or authorizations for the construction of the wind energy facility.

¶ 28 Appellant filed a petition naming as defendants the Board of County Commissioners, Board of Adjustment and Osage Wind, LLC. Appellant sought both declaratory and injunctive relief. The petition alleges the Osage County Wind Energy Ordinance cannot be used as a basis to issue a conditional use permit, and any permit issued pursuant to the ordinance is void and has no effect. The petition alleges the conditional use permit is in violation of the zoning laws of Osage County. The petition did not request any immediate relief for halting construction of the project prior to its completion or during the litigation. The petition sought injunctive relief "against each of the Defendants permanently enjoining and restraining them from permitting, authorizing, constructing and using a Wind Energy Facility on the property listed in the Application of Osage Wind based upon the approval of CUP 2012-1."

¶ 29 The trial court stated that the claims in CV-2014-41 were barred by laches. Laches is an equitable defense to bar stale claims in equity.[28] Defendants also challenged the standing of the Osage Nation, and we assume it did possess standing for the purpose of this opinion and application of the laches defense. We address first the claims for injunctive relief and whether they are barred by laches.

¶ 30 The petition was filed June 25, 2014, and alleges: (1) the Board of Adjustment held a hearing on August 11, 2011, on Osage Wind's application for a conditional use permit, and the Plaintiffs testified at that hearing against approval of Osage Wind's project; (2) the Board of Adjustment approved the application at the conclusion of the public hearing; (3) a conditional use permit had been issued to Osage Wind to construct a "utility-scale wind energy project" or facility; (4) Osage Wind has conducted excavation activities and "already entered" the Osage Mineral Estate for each turbine foundation and for the miles of underground collection lines; (5) each turbine foundation was ten feet deep, fifty feet wide underground, and seventy feet wide at the surface; (6) "[i]mmediately after learning" Osage Wind began construction plaintiffs filed a petition with the Board of Adjustment to rescind Osage Wind's permit, and the petition was denied by the Board on May 5, 2014; and (7) "Osage Wind is in the process of constructing the Wind Energy Facility;" (8) the facility is to be located on thirty-one tracts of land in seventeen sections of land containing approximately 8,000 acres;[29] (9) the petition's incorporated Exhibit 6, the partial application for a permit by Osage Wind, shows a map with 94 proposed wind turbine locations; and (10) Exhibit 5 shows the Osage County Wind Energy Ordinance setting forth the requirements for a wind energy project, such as access roads to the turbines must be "private roads" locked and inaccessible to the public, and Exhibit 6 shows these required private access roads to each of the 94 turbine locations.

the District Court Clerk or the Board of Adjustment, bearing no file stamp, and appears to be a copy of the petition to vacate filed with the Board. No copy of this petition appears in the appellate record in Okla. Sup. Ct. No. 113,415.

**28.** *B & M Intern. Trading Co. v. Woodie Ayers Chevrolet, Inc.*, 1988 OK 133, 765 P.2d 782, 784 (laches is a defense to an claim made in equity);

*Nichols v. Nichols*, 2009 OK 43, n. 24, 222 P.3d 1049, 1056 (laches is an equitable defense against the tardy prosecution of stale claims).

**29.** Sections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, and 36 in Township 26 North, Range 6 East of the Indian Meridian in Osage County.

¶ 31 Osage Nation argues the defense of laches may not be invoked by a motion to dismiss challenging a plaintiff's petition. Osage Nation cites an opinion for the concept laches is discretionary depending on the facts and circumstances of each case.[30] Osage Nation concludes laches is a fact-based defense which is not proper to support a motion to dismiss testing the legal sufficiency of a petition.

¶ 32 This Court and federal courts have held for many years that laches may be sufficiently raised as a defense when the grounds for the defense appear on the face of a state-court petition or federal complaint.[31] We must examine the elements of a laches defense and measure them against plaintiffs' petition with its attached exhibits.

¶ 33 Generally, the equitable defense of laches bars a claim where delay in bringing or prosecuting the claim is unreasonable, and the defendant has been materially prejudiced by the delay.[32] Other courts have determined a plaintiff's inexcusable delay in challenging a building permit issued to another party may be used to support a defense of laches when the plaintiff seeks an injunction.

¶ 34 In a 2012 Massachusetts case,[33] plaintiff knew for five years a building permit had been issued and for two years she watched construction of the building project before she raised the issue of a zoning violation.[34] During this time significant resources in the project were being invested and the court characterized the plaintiff's conduct as "unjustified, unreasonable, and prejudicial." The court concluded as a matter of equity, the doctrine of laches justified rejection of plaintiff's request for an injunction.

¶ 35 In a 2008 New York case,[35] plaintiff sought to challenge a building permit issued to a neighbor. The permit was issued in June 2006, construction commenced the following month and it was finished three months later. Soon after construction was complete an action was commenced the petitioner sought an injunction. The court explained the petitioner had knowledge of the permit, the intended use of the property, and the construction. The court concluded laches was a bar to issuing an injunction because petitioner delayed in seeking to protect her interests.[36]

¶ 36 Courts have applied the same elements to a defense of laches when concluding laches was not present because a party promptly asserted an objection to a building permit and the opposing party had not incurred significant development and construction expenses.[37] We have used a similar anal-

---

**30.** Plaintiffs relied upon *Chesapeake Operating, Inc. v. Carl E. Gungoll Exploration, Inc.*, 2005 OK CIV APP 45, ¶7, 116 P.3d 213 (released for publication by the Court of Civil Appeals) where the appellate court quoted from *Smith v. The Baptist Foundation of Oklahoma*, 2002 OK 57, ¶9, 50 P.3d 1132, 1138.

**31.** The former practice in Oklahoma of using a demurrer to challenge a petition allowed laches to be raised by demurrer when laches clearly appeared on the face of the petition. *May v. City Nat. Bank & Trust Co.*, 1953 OK 396, 258 P.2d 945 citing *Fibikowski v. Fibikowski*, 1939 OK 390, 185 Okla. 520, 94 P.2d 921, 922. In federal court a defendant may show the defense of laches "from the face of the complaint." *Pepper v. Truitt*, 158 F.2d 246, 251 (10th Cir. 1946). See *Lennon v. Seaman*, 63 F.Supp.2d 428, 439 (S.D.N.Y. 1999) ("when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss"). Cf. *Mercantile Nat. Bank of City of Hartford v. Carpenter*, 101 U.S. 567, 568, 25 L.Ed. 815 1879 (the objection of laches was "fatally apparent" and

demurrers were properly sustained on this defense as one ground therefor).

**32.** *Hedges v. Hedges*, 2002 OK 92, ¶8, 66 P.3d 364, 369. See *Sears v. State Dept. of Wildlife Conservation*, 1976 OK 56, 549 P.2d 1211, 1214 (Laches is delay that is unreasonable and inexcusable under circumstances shown, and is not mere delay or lapse of time, but is delay that works disadvantage to another than party guilty thereof.).

**33.** *Richardson v. Board of Appeals of Chilmark*, 81 Mass.App.Ct. 912, 969 N.E.2d 727 (2012).

**34.** *Richardson v. Board of Appeals of Chilmark*, 969 N.E.2d at 730.

**35.** *Clarke v. Town of Sand Lake Zoning Bd. of Appeals*, 52 A.D.3d 997, 860 N.Y.S.2d 646 (2008).

**36.** *Clarke v. Town of Sand Lake Zoning Bd. of Appeals*, 52 A.D.3d 994, 860 N.Y.S.2d 649-650.

**37.** See, e.g., *Bauman v. Turpen*, 139 Wash.App. 78, 160 P.3d 1050, 1058 (2007) (Laches did not

ysis in our opinions where we have examined the date a building permit was issued, when legal action was instituted to enjoin construction, and whether construction had commenced.[38]

¶ 37 In the present matter, the petition shows plaintiffs testified against the conditional use permit in August 2011, and they knew at that time the permit had been issued. They did not bring their action in the District Court for an injunction until June 25, 2014, almost three years later. Plaintiffs objected as procedurally improper Osage Wind's statement in support of its motion to dismiss that it had expended two hundred and twenty million dollars ($220,000,000) in various costs. We need not consider that statement in concluding that laches apply and plaintiffs' claims are barred on the face of the petition.

¶ 38 The petition alleges the facility is a "utility-scale" construction project, construction had commenced prior to filing the petition, and this construction included at least the foundations for the wind turbines and construction for miles of underground collection lines according to the petition. This "utility scale" of the project was disclosed in Osage Wind's 2011 public application, and plaintiffs had knowledge of the scale of the project at that time. The admitted attribute of "utility scale" and the project application used by plaintiffs in their petition are sufficient to indicate the expenditure of a large amount of money for construction in this zoning dispute.

¶ 39 The petition seeks relief in the form of a "permanent injunction." The petition acknowledges ongoing construction of the project, but seeks no temporary halt to the construction pending the litigation. Laches jurisprudence involving improper building permits or improper application of zoning laws shows that a non-governmental plaintiff's claim may not be disassociated from the practical economic consequences of a defendant engaged in an ongoing construction project and incurring expenses, even if the construction is contrary to a zoning law or permit. Laches requires reasonable conduct on the part of a plaintiff in taking legal efforts to stop or prevent alleged wrongful construction prior to an injury arising from economic damage occasioned by the project, thus minimizing economic damage flowing from alleged wrongful construction. Placing a duty on a plaintiff to take reasonable actions to minimize economic damage from a defendant's conduct is not a principle unique to laches jurisprudence.[39]

¶ 40 We need not analyze two issues raised by the Osage Nation's claims for injunctive relief and Osage Wind's motion because we agree with the trial court in applying laches to bar injunctive relief. First, we need not analyze the Osage Nation's participation at the 2011 Board of Adjustment hearing and the doctrine requiring a party to exhaust remedies. The petition states the plaintiffs, the Osage Nation and the Osage Minerals Council, appeared and testified when the board granted the permit. Plaintiffs did not timely appeal the board's decision to the

occur when neighbors filed legal action immediately after learning building permit was issued.); *Hall v. Trubey*, 269 Ga. 197, 498 S.E.2d 258, 261 (1998) (despite issuance of building permits, where property owner had not received zoning variance to construct residential units on property zoned strictly for commercial use, adjacent property owner's action for injunction was not barred by laches even though formal lawsuit was not filed until several months after construction project began; because owner promptly asserted her objections as soon as she discovered intended residential purposes, and before other party incurred any significant expense to develop).

38. *Williamson v. Needles*, 1942 OK 409, 191 Okla. 560, 133 P.2d 211, 218 (When a legal action was brought by neighbors to enjoin construction of automobile service station one

month after issuance of a building permit and prior to commencement of any work on the premises the conduct of plaintiffs showed the absence of laches.).

39. For example, when a duty to mitigate is present a plaintiff has a duty to minimize damages after injury occurs, and this duty has ancient origins. *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231, n. 15, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (A duty to mitigate damages has an ancient origin and operates to prevent a plaintiff from recovering for damages which could have been avoided.); *Fields v. Volkswagen of America, Inc.*, 1976 OK 106, 555 P.2d 48, 62, 84 A.L.R.3d 1199 (a duty to mitigate damages cannot arise before the damage occurs, and the failure to mitigate must occur after the injury).

District Court, and an appeal to the District Court may be brought from "any decision" of a county board of adjustment by any person or persons, firm or corporation, aggrieved thereby.[40]

¶ 41 *Generally*, the existence of an adequate alternative remedy, including an appeal, precludes equitable relief such as issuance of an injunction,[41] unless the injunction is a concurrent remedy.[42] In *O'Rourke v. City of Tulsa*, we explained a property owner aggrieved by a zoning ordinance could (1) in a District Court attack an ordinance directly as unconstitutional, and (2) seek an exception or variance; and the property owner was not required to seek an exception or variance before attacking the ordinance directly.[43] Attacking the ordinance directly is a District Court challenge to an exercise of legislative power by the entity creating the zoning ordinance,[44] but a county board's decision for an exception or conditional use permit is an exercise of quasi-judicial power,[45] with a subsequent statutory remedy by an appeal. Clear and adequate statutory remedies may be sufficient to foreclose injunctive relief[46] in circumstances where either quasi-judicial[47] or judicial power is exercised.[48] We need not determine the legal effect of the Osage Nation's participation at the 2011 permit hearing or the adequacy of a remedy by appeal from the board's decision granting the per-

**40.** 19 O.S.2011 866.24. See note 11 *supra*.

**41.** *Smith v. Bovaird Supply Co.*, 1980 OK 129, 616 P.2d 1157, 1159 (adequate remedy at law precludes injunction); *Wheeler v. Ridpath*, 1927 OK 289, 126 Okla. 290, 259 P. 247 (a party's failure to pursue a remedy of an appeal may not be substituted with a suit for injunction).

**42.** *Weatherford Mill. Co. v. Duncan*, 1914 OK 243, 42 Okla. 242, 140 P. 1184 (an injunction may be considered a concurrent remedy in some circumstances and a remedy by appeal will not prevent a *suit for equitable relief*).

**43.** 1969 OK 112, 457 P.2d 782, 785–786.

**44.** *Gregory v. Board of County Com'rs of Rogers County*, 1973 OK 101, 514 P.2d 667, 670–671 (The enactment or amendment of a zoning regulation by Board of County Commissioners is an exercise of legislative power where no appeal would lie to a District Court.).

**45.** *Mustang Run Wind Project, LLC v. Osage County Bd. of Adjustment*, 2016 OK 113, ¶ 30, 387 P.3d 333, 345.

**46.** *Muskogee Fair Haven Manor Phase 1, Inc. v. Scott*, 1998 OK 26, ¶ 12, 957 P.2d 107, 111 (party appeared before county assessor, appealed to county board of equalization, then board of tax roll corrections, but did not appeal from that board to the District Court; and in a subsequent District Court proceeding for a declaratory judgment the Court held "a judge's powers in equity are not invocable when clear and adequate statutory remedies are available"); *Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality*, 2002 OK 94, ¶ 9, 61 P.3d 219 (adequacy of an alternative remedy will depend on whether that remedy provides an opportunity to afford complete relief on party's asserted legally cognizable right).

**47.** *Bowen v. State ex rel. Okla. Real Estate Appraiser Bd.*, 2011 OK 86, ¶¶ 12–15, 270 P.3d 133, 137–138 (When an administrative board acts in an adjudicative capacity it exercises a quasi-judicial power similar to a court exercising a judicial power, and circumvention of this remedy may be based upon the presence of a constitutional question, inadequate administrative relief, and threatened or impending irreparable injury.). *Cf. Daffin v. State ex rel. Dept. of Mines*, 2011 OK 22, 251 P.3d 741 (Court affirmed issuance of a temporary injunction granted to property owner to prevent the Oklahoma Department of Mines proceeding on an application by another for a mining permit when administrative remedy was unavailable, ineffective or futile); *Larry Jones Intern. Ministries, Inc. v. Means*, 1997 OK 125, 946 P.2d 669, 671 (generally, the nature of an *appeal* from a decision by a non-judicial official to a court exercising a judicial power shows the nature of the official's decision as quasi-judicial in nature); *Jackson v. Independent School Dist. No. 16 of Payne County*, 1982 OK 74, n. 20, 648 P.2d 26, 31 (Quasi–Judicial power is a term applied to the action of public administrative officers or boards which investigate facts or ascertain the existence of facts; draw conclusions from them as a basis for official action; and exercise discretion of a judicial nature in connection with and incidental to the administration of matters entrusted to or assigned to the officers or board.).

**48.** *Macy v. Oklahoma City School Dist. No. 89*, 1998 OK 58, ¶ 25, 961 P.2d 804 (equity will not be used to create an election contest remedy in place of a statutory remedy where no showing has been made that the statutory remedy is inadequate to protect a legally cognizable right); *Burford v. Kephart*, 1948 OK 126, 200 Okla. 344, 194 P.2d 167, 168–169 (remedies provided by these statutes [for attacking a judgment rendered in the exercise of a judicial power] are exclusive of relief by an action in equity, unless it be shown that the statutory remedy is inadequate).

mit.[49]

¶ 42 Secondly, we need not adjudicate whether the Osage Nation's failure to seek temporary relief to halt construction pending the litigation requires application of the maxim *vigilantibus et non dormienibus jura subveniunt*, "The laws aid those who are vigilant, not those who sleep on their rights."[50] More than a century ago a court noted this maxim when a plaintiff failed to seek a temporary injunction to prevent the construction of railway track during litigation and the suit turned into a mandatory injunction to destroy and remove a completed track.[51] Application of this maxim is *similar* to our opinions dismissing requests for a preventative or prohibitory injunction due to mootness.[52] Some requests by the Osage Nation seek preventive relief and some seek mandatory relief in the form of restoring property to its original condition.[53] We need not adjudicate whether the Osage Nation could preserve a request for preventative injunctive relief or maintain its proceeding in equity to halt and remove construction to real property without also seeking a temporary injunction pending the litigation to preserve the status quo.

¶ 43 Plaintiffs brought their action almost three years after a permit was issued by the governmental agency authorizing the location of the project and after construction had commenced on a utility scale construction project. Plaintiff had knowledge of the scale and location of the project during that three-year period. We affirm the District Court's order dismissing plaintiff's petition against Osage Wind upon application of laches.

¶ 44 Plaintiffs also argued their request for injunctive relief could not be barred by laches because laches does not apply against the state when acting in its sovereign capacity, and by extension laches may not apply against the Board of Commissioners and the Board of Adjustment as governmental entities. This argument has three components which must be addressed.

¶ 45 First, they argue laches may not be invoked against Osage Nation in its claim against the government entities to compel

---

**49.** This issue also arises as a necessary part of Osage Wind's argument in its motion that participation in the board of adjustment proceeding by the Osage Nation created an estoppel. Issue preclusion is based on a party having had a full and fair opportunity to litigate the claim or critical issue. *Durham v. McDonald's Restaurants of Oklahoma, Inc.*, 2011 OK 45, ¶ 5, 256 P.3d 64, 66–67. An estoppel may apply in the context of the exercise of a quasi-judicial power that is adjudicatory in nature, when a method of appeal is provided, and when the proceeding complies with the standards of procedural and substantive due process. *State ex rel. Dept. of Transp. v. Little*, 2004 OK 74, n. 48, 100 P.3d 707, 719–720. An exercise of quasi-judicial power satisfying these qualifications, such as a quasi-judicial administrative determination not appealed administratively or subjected to a timely judicial review, and which becomes final *may* create an estoppel. *Id.* We need not address Osage Wind's theory an estoppel arose by the Osage Nation's appearance before the board of adjustment resulting in a final permit, or whether the procedure used by Osage Wind in the trial court was proper for raising this issue.

**50.** *Black's Law Dictionary*, 1740 (4th ed. 1951).

**51.** *Becker v. Lebanon & M. Ry. Co.*, 43 W.N.C. 229, 188 Pa. 484, 41 A. 612 (1898) (maxim noted and relief denied to plaintiff, and court held the benefit to plaintiff was "entirely disproportionate" to both the loss to the railway and the inconvenience to the public by removal of the track).

**52.** *Lawrence v. Cleveland County Home Loan Authority*, 1981 OK 28, 626 P.2d 314 (Court noted the suit sought injunctive relief to *prevent* issuance and sale of bonds, and no attempt had been made to *prevent* issuance and sale pending an appeal; and after the bonds had been issued, sold, and delivered pending appeal the Court dismissed the appeal as moot); *Saxon v. Macy*, 1990 OK 60, 795 P.2d 101, 102, citing *Westinghouse Electric Corp. v. Grand River Dam Authority*, 1986 OK 20, 720 P.2d 713, 721 ("when an act sought to be enjoined has been already performed, an appeal from the injunction action is moot"); *Post v. Kingdom Hall of Jehovah's Witnesses*, 1955 OK 127, 283 P.2d 528, 529 (a request for an injunction will be dismissed as moot when the act to be prevented has occurred in fact).

**53.** An injunctive request has the nature of a mandatory injunction when it seeks the restoration of a thing to its original condition. 4 *Pomeroy's Equity Jurisdiction and Equitable Remedies*, 1337, p. 2665 (3d ed. 1905). *Cf. City of Del City v. Harris*, 1973 OK 27, 508 P.2d 264, 266 (explaining a prohibitory injunction is not stayed pending an appeal but a mandatory injunction is stayed in order to maintain a status quo pending litigation to prevent an appeal becoming inadequate and futile).

them to perform their alleged governmental duty in rescinding Osage Wind's permit. Secondly, they are seeking an injunction to compel government entities to rescind the conditional use permit by Osage Wind, and argue Osage Wind may not use laches against the county government entities when those entities seek to rescind Osage Wind's permit and also require Osage Wind to cease producing electricity and additional construction. In other words, plaintiffs' reasoning is that Osage Wind would not have the same rights to raise defenses such as laches in an action brought by county government entities to revoke their permit as Osage Wind would have in an action brought against it by an entity such as the Osage Nation. Thirdly, the state and its subdivisions cannot be estopped from protecting public rights when public officials have acted erroneously or failed to act.[54] As we explain herein, our prior opinions show laches is proper to prevent both the Osage Nation and the governmental entities in a zoning action against Osage Wind on *the face of the petition*, but laches will not prevent a declaratory judgment request on the challenge to the legality of the Osage Wind Ordinance.

¶ 46 A mandatory injunction is an extraordinary remedial process and seeks relief in the form of commanding the performance of a positive act.[55] An action seeking a mandatory injunction against a public official to compel the enforcement of law is usually considered to be in the nature of mandamus.[56] While an injunction and mandamus are not identical in all contexts, the elements of both are identical in some respects [57] and laches *may* apply to bar a petition for either injunction or mandamus when the action is brought by a private party against a government official to compel performance by that official.[58] *Generally*, equitable proceeding defenses such as laches and estoppel are not available against the state and its agencies acting in a sovereign capacity,[59] *unless application would further a principle of public*

54. *City of Claremore v. Town of Verdigris*, 2001 OK 91, ¶ 19, 50 P.3d 208, quoting *General Motors Corp. v. Oklahoma County Bd. of Equalization*, 1983 OK 59, ¶ 13, 678 P.2d 233, 236 *cert. denied*, 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984).

55. *Peck v. State ex rel. Department of Highways*, 1960 OK 89, 350 P.2d 948, 950.

56. *Saxon v. Macy*, 1990 OK 60, 795 P.2d 101 (an action for injunctive relief against a public official to perform an alleged duty "was *in the nature of* a writ of mandamus") (emphasis added), *Garner v. City of Tulsa*, 1982 OK 104, 651 P.2d 1325 (mandamus will issue against a public official where an obligation is imposed by law).

57. Compare, *Moore v. Porterfield*, 1925 OK 914, 113 Okla. 234, 241 P. 346 ("Although as a general rule the discretionary powers of a public official will not be controlled by injunction, yet injunction may be issued in case of a gross abuse of such discretion or where it appears that such action is founded on fraud, corruption, improper motive, plain disregard of duty, gross abuse of power, or violation of the law." (Syllabus by the Court) *with State Highway Com'n v. Green-Boots Const. Co.*, 1947 OK 221, 199 Okla. 477, 187 P.2d 209, 214 (The rule is well established that a writ of mandamus may not lawfully issue to control a decision of an officer vested with discretion, but mandamus will lie to correct a gross abuse of discretion by an official acting wholly through fraud, caprice, or by purely arbitrary decision and without reason.). *Cf. Pulliam v. Allen*, 466 U.S. 522, 549–550, 104 S.Ct. 1970, 80 L.Ed.2d 565 (Powell, J., dissenting, joined by Burger, C.J.; Rehnquist and O'Connor, JJ., distinguishing supervisory writs of mandamus and prohibition against judicial officials which are used to control the exercise of jurisdiction from suits for injunctive relief against private parties used to stay suit or stay execution after judgment).

58. *Peck v. State ex rel. Department of Highways*, 1960 OK 89, 350 P.2d at 950 (even when the right at issue is clear a mandatory injunction will issue only in a case of extreme necessity, and the right invaded is material and substantial, where an adequate remedy is not available, *and when unreasonable delay has not occurred by the person in seeking the injunction*); *Stonecipher v. District Ct. of Pittsburg County*, 1998 OK 122, ¶ 9, 970 P.2d 182, 185 ("mandamus will not issue when barred by laches"); *Versluis v. Hamilton*, 1951 OK 335, 207 Okla. 325, 249 P.2d 439 (mandamus action by owner of paving bonds to compel county treasurer to enforce lien of the assessments was barred by laches).

59. *Oklahoma Dept. of Securities ex rel. Faught v. Blair*, 2010 OK 16, 28, n. 30, 231 P.3d 645, 662, citing *State ex rel. Cartwright v. Tidmore*, 1983 OK 116, 674 P.2d 14, 17; *State ex rel. Oklahoma Tax Comm'n v. Emery*, 1982 OK CIV APP 13, 645 P.2d 1048, 1051 (Approved for Publication by Supreme Court).

*policy or interest.*[60] The public policy or public interest present in a controversy determines whether laches may apply, and not the mere fact a governmental entity is a party.

¶ 47 In 1929, this Court recognized a permit issued by mistake or in violation of an ordinance could be revoked, *"where the permittee has not substantially changed his position by reason of such permit."*[61] In 1994, this Court expressly rejected a party's argument that an estoppel could not be applied against a governmental entity in a controversy involving issuance of a conditional use permit.[62]

¶ 48 A part of plaintiffs' reasoning is Osage Wind could not reasonably rely upon the good faith of the officials constituting the Board of County Commissioners when creating the Osage Wind Energy Ordinance or the members of the Board of Adjustment when issuing Osage Wind a permit for the facility. We have explained an entity relying on representations of a public official does so at its peril—such reliance is not sufficient to excuse ignorance of the law as it actually exists when, for example, the party relies upon oral or written representations by an official.[63]

¶ 49 In the present case, Osage Wind is relying on a legislative act, the Osage County Wind Energy Ordinance, which states "A wind energy facility may be constructed as provided in this ordinance...." Osage Wind is relying on the application of that ordinance by the Board of Adjustment when exercising a quasi-judicial power in issuing a permit after public notice; and when that exercise of quasi-judicial power was upon a record subject to an appeal to a District Court and no party, private or governmental, brought a timely appeal for de novo review. Osage Wind's reliance is based on a general presumption of validity which attaches to legislative acts,[64] including municipal ordinances,[65] and when the existence of necessary facts to sustain the validity of a municipal ordinance is presumed with an or-

60. *Oklahoma Dept. of Securities ex rel. Faught v. Blair*, 2010 OK 16 28, n. 31, 231 P.3d at 662, citing, *Indiana Nat'l Bank v. State Dept. of Human Services*, 1993 OK 101, 857 P.2d 53, 64 ("The general rule is the application of estoppel is not allowed against the state, political subdivisions or agencies, unless it would further a principle of public policy or interest."); *Burdick v. Independent School Dist.*, 1985 OK 49, 702 P.2d 48, 53 (same).

61. *McCurley v. City of El Reno*, 1929 OK 306, 138 Okla. 92, 280 P. 467 (Syllabus by the Court) (emphasis added). In *McCurley*, the Court explained the permit was in violation of an ordinance, the permittee possessed constructive knowledge the permit was in violation of the ordinance, and permittee's position was substantially unchanged since the construction permittee had undertaken was limited to "four or five men" doing "a half day's work." *Id.* 280 P. at 472.

62. *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, n.9, 875 P.2d 1138, 1143, citing, *Burdick v. Independent School*, 1985 OK 49, 702 P.2d 48 (If the facts and circumstances implicate a prevailing public interest, the case will except it from the general rule precluding the use of estoppel against the government.).

63. *In re Initiative Petition No. 379, State Question No. 726*, 2006 OK 89, ¶ 18, n. 42, 155 P.3d 32, 39, (information from an employee of the Oklahoma Secretary of State), citing *General Motors Corp. v. Oklahoma County Bd. of Equalization*,

1983 OK 59, ¶ 17, 678 P.2d 233, *cert. denied*, 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984) (State Industries Authority lease with party, and party asserted reliance was based upon oral representations and an opinion of the Oklahoma Attorney General that public trust properties were not subject to taxation); *Rose Bros., Inc. v. City of Alva*, 1960 OK 231, 356 P.2d 1083 (party charged with knowledge of municipal law when contracting with city); *Cochran v. Norris*, 1935 OK 1036, ¶0, 175 Okla. 126, 51 P.2d 736 (party charged with knowledge of law relating to contractually specified payments based upon a special assessment on real property); *City of Enid v. Warner–Quinlan Asphalt Co.*, 1916 OK 1010, ¶0, 62 Okla. 139, 161 P. 1092 (party charged with knowledge of law when creating a contract with a city).

64. *Taylor v. State and Educ. Employees Group. Ins. Program*, 1995 OK 51, 897 P.2d 275, 277 ("Legislation is strongly presumed to be constitutional.").

65. *McFall v. City of Shawnee*, 1976 OK 185, 559 P.2d 433, 437 (city ordinance was "presumptively constitutional" and "where an ordinance is not void upon its face, but its invalidity is dependent upon facts, it is incumbent upon the party relying upon the invalidity to aver and prove the facts which make it so."); *Mid–Continent Life Ins. Co. v. City of Oklahoma City*, 1985 OK 41, 701 P.2d 412, 413 ("Zoning is a legislative function which is due the presumptive validity of any municipal ordinance.").

dinance regular on its face as to approval.[66] Osage Wind (1) relied in good faith, (2) upon an act of the government facially appropriate for the construction it sought,[67] (3) incurring extensive expenses and investments it would be highly inequitable and unjust to destroy, and (4) that reliance, act of the government, and expenses in construction were public and known by both the plaintiffs and the government parties to this litigation at a time when Osage Wind's reliance and expenses of development and construction could have been greatly lessened, or avoided, by plaintiffs' timely pursuit of their claims in a proper forum.

¶ 50 Plaintiffs delayed from 2011 to 2014 to bring an action in a District Court. Laches has been described as an acquiescence involving a quiet submission or compliance with acts from which assent can reasonably be inferred.[68] Approximately two and one-half years prior to the Osage Nation's 2014 litigation in the District Court for Osage County, the Osage Nation brought a federal court suit against Osage Wind. That suit was decided against the Osage Nation in December 2011.[69] Due to the time intervening from that date and the 2014 District Court proceedings in 2014 and the laches-based factors discussed herein, we need not adjudicate the impact of the federal suit on a laches defense.

¶ 51 We agree with the trial court's decision applying laches to bar (1) all claims against Osage Wind for injunctive relief brought by plaintiffs and (2) all claims against Osage Wind brought indirectly against Osage Wind by plaintiffs requesting relief against the Board of County Commissioners and Board of Adjustment. The order dismissing with prejudice plaintiffs' petition against Osage Wind on all injunctive relief claims due to laches is affirmed.

¶ 52 All claims for injunctive relief in the petition against the Osage County Board of Commissioners and the Board of Adjustment of Osage County are tied to permitting, authorizing, and allowing Osage Wind's permit and facility. The order dismissing with prejudice plaintiffs' petition against the Osage County Board of Commissioners and the Board of Adjustment of Osage County is affirmed as to all claims for injunctive relief. *All claims in plaintiffs' petition for injunctive relief are barred by laches.*

## B. Declaratory Relief and Standing

¶ 53 The petition sought a declaratory judgment stating (1) the wind energy facility could not be permitted by the zoning laws, the Board of Adjustment had no power to approve a conditional use permit; (2) the permit issued to Osage Wind was not authorized, (3) a wind energy facility was not authorized in an agriculture district; (4) a wind energy facility does not conform to certain zoning regulations is in violation thereof; (5) section 6.5.2 of the Osage County Zoning Ordinance was an unauthorized delegation of power from the Board of County Commissioners to the Board of Adjustment to issue a conditional use permit for a wind energy facility; (6) the Board of Adjustment had no power to issue a conditional use permit; (7) the permit issued to Osage Wind is void; (8)

**66.** *Magnolia Petroleum Co. v. Wright*, 1926 OK 196, 124 Okla. 55, 254 P. 41, 44.

**67.** Reliance on an act of the government must be based on an act that would create a reasonable reliance, such as a facially proper permit for the circumstances. *See, e.g., Brown v. Midwest City*, 1963 OK 67, 380 P.2d 92 (owner obtained a permit requiring construction conforming to zoning ordinances and the construction did not conform; but the *owner's permit was not the correct permit from the county engineer required by zoning ordinances*, and after "incurring some expense in the preliminary stages" of construction, the city issued a 'stop order,' construction ceased, and city's action was not subject to equitable relief instituted by the owner in District Court).

**68.** *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 10, 50 P.3d 1132, 1139.

**69.** The Osage Nation sought declaratory and injunctive relief against Osage Wind in a proceeding brought in the United States District Court for the Northern District of Oklahoma, and after a non-jury trial the court concluded the proposed facility did not violate Oklahoma law, and denied the Osage Nation's request for an injunction and dismissed the suit. *Osage Nation ex rel. Osage Minerals Council v. Wind Capital Group, LLC*, N. D. Okla. No. 11-CV-643-GKF-PJC (Dec. 20, 2011), (2011 WL 6371384), *appeal dismissed*, (10th Cir. 12-5007) (Feb. 23, 2012). Osage Wind relied upon this litigation as part of its motion to dismiss.

section 3.4 of the Wind Energy Ordinance does not give power to the Board of Adjustment to issue a conditional use permit or variance of the Zoning Ordinance for a wind energy facility; and (9) approval of a permit or variance by the Board pursuant to section 3.4 of the Osage County Wind Energy Ordinance is void.

¶ 54 Part of plaintiffs' cause of action for a declaratory judgment raises the statutory authority for a board of adjustment to issue a conditional use permit. This issue was decided against the Osage Nation in *Mustang Run Wind Project, LLC v. Osage County Board of Adjustment*, 2016 OK 113, 387 P.3d 333, and that part of the trial court's order herein dismissing this claim as a matter of law is affirmed.

■ ¶ 55 Plaintiffs' requests in the petition for a declaratory judgment raise the issue whether they should be treated as a cause of action separate from the requests for injunctive relief.[70] A suit for declaratory judgment pursuant to 12 O.S. 1651 is neither strictly legal nor equitable, but assumes the nature of the controversy at issue.[71] Many of plaintiffs' requests for a declaratory judgment are linked in the petition to requests for injunctive relief relating to Osage Wind's facility and possess the nature of equitable relief.

¶ 56 We hold herein the District Court correctly applied laches to bar plaintiffs' requests for injunctive relief. We also hold all of plaintiffs' requests for a declaratory judgment *linked to Osage Wind's facility* are also

barred by laches pursuant to that same authority which applies laches to bar injunctive relief.[72] *Laches bars **all** of plaintiffs' requests herein for a declaratory judgment relating to Osage Wind's conditional use permit for its facility and application of zoning laws to the facility.*

■ ¶ 57 Plaintiffs' petition also seeks a declaratory judgment that the zoning ordinances in Osage County do not permit *any* wind energy facility in an area zoned as an agricultural district. This claim is based upon an allegation the Osage County Wind Energy Ordinance was adopted by the Pawhuska-Osage County Area Planning Commission and the Board of County Commissioners of Osage County after a notice to the public which failed to expressly state the Wind Energy Ordinance was an amendment to specific zoning ordinances.

■ ¶ 58 A declaratory judgment may be sought to determine the validity of any statute, municipal ordinance, or other governmental regulation, "whether or not other relief is or could be claimed," except in few circumstances not applicable herein.[73] We have described a violation of a municipal zoning ordinance as a "continuing violation" and "an injury to the city and its citizens" as to which in a proper circumstance injunctive relief is available to enforce an ordinance.[74] The Osage Nation asserts a "continuing violation" in the sense the Wind Energy Ordinance was allegedly not created properly and continues to be invalid and an injury to the

70. *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476, 481 (in a child custody controversy the Court treated a portion of father's claim as a separate cause of action for a declaratory judgment "in chancery").

71. *Macy v. Oklahoma City School Dist. No. 89*, 1998 OK 58, ¶ 11, 961 P.2d 804, 807.

72. *Macy v. Oklahoma City School Dist. No. 89*, *supra*, at n. 71.

73. 12 O.S. 2011 1651:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or oth-

er instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

74. *City of Tulsa v. Crain*, 1978 OK 2, 573 P.2d 707, 709.

citizens of Osage County, or the Osage Nation itself as an entity, or its members individually.

¶ 59 The Osage Nation's laches-based failure on its causes of action against Osage Wind and the government entities for the purpose of injunctive relief and declaratory relief tied to injunctive relief, *does not adjudicate the Osage Nation's cause of action testing the legal validity of the creation of the Wind Energy Ordinance*.[75] No party has argued that an exclusive remedy or exhaustion of another remedy is required for a party such as the Osage Nation before its challenge to the creation of the Wind Energy Ordinance by a declaratory judgment proceeding.[76]

¶ 60 Defendants raised defenses in addition to laches. They challenged the plaintiffs' standing. In addressing the laches defense we assumed the standing of the Osage Nation *for the purpose of this opinion and explaining the defense of laches is proper.* When addressing standing the parties focused on the alleged harm to the plaintiffs caused by the construction of the facility. Defendants' efforts to show a lack of harm was based upon statements contained in a federal court opinion, and they raised a defense based upon issue preclusion or collateral estoppel.[77]

¶ 61 We have recently explained standing must be predicated on cognizable economic harm when a legislative act is challenged as unconstitutional or invalid. A person who seeks to invalidate a statute as unconstitutional must establish standing by showing that the legislation sought to be invalidated detrimentally affects his/her interest in a direct, immediate and substantial manner.[78] Similarly, in some states, standing based upon public nuisance and municipal zoning law is based upon an allegation of injury *to the plaintiff* which is different in kind from that experienced by the residents in general.[79]

¶ 62 Standing to challenge the ordinance itself apart from the construction requires a different analysis, but also must be based upon a legally cognizable interest infringed by the challenged legislation (ordinance). We have said that an association possesses standing to seek relief on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[80] The petition identifies the Osage Nation as a sovereign Indian Na-

75. *Murray County v. Homesales, Inc.*, 2014 OK 52, ¶¶ 19–20, 330 P.3d 519, 528–529 (declaratory judgment cause of action could proceed where cause of action based on the Documentary Stamp Tax Act [68 O.S.2011 3201–3206] could not).

76. See the discussion pertaining to injunctive relief and remedies and associated notes 41–48, *supra. Compare Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality*, 2002 OK 94, ¶¶ 10, 61 P.3d 219, 224 (section 306 of the administrative procedures act states an exception to exhaustion of administrative remedies when seeking a declaratory judgment when an administrative rule threatens, interferes, or impairs legal rights and privileges) *with Arbuckle Abstract Co. v. Scott*, 1998 OK 125, ¶ 1, 975 P.2d 879, 880 (exhaustion of administrative remedies required prior to declaratory judgment action).

77. *Benham v. Plotner*, 1990 OK 64, 795 P.2d 510, 512 (The doctrine of issue preclusion or collateral estoppel is activated when an ultimate issue has been determined by a valid and final judgment-that question cannot be relitigated either by

a party to, or a party in privity with, the prior adjudication in any future lawsuit.).

78. *Jacobs Ranch, L.L.C. v. Smith*, 2006 OK 34, n. 2, 148 P.3d 842.

79. *Sears v. Hull*, 192 Ariz. 65, ¶ 19, 961 P.2d 1013, 1018 (1998) citing *Armory Park Neighborhood Ass'n v. Episcopal Community Servs. in Ariz.*, 148 Ariz. 1, 5, 712 P.2d 914, 918 (1985); *Renard v. Dade County*, 261 So.2d 832, 837 (Fla. 1972) (generally, challenging an exercise of zoning authority requires a plaintiff to prove special damages different in kind from that suffered by the community as a whole) (superseded by statute).

80. *Oklahoma Public Employees Association v. Oklahoma Department of Central Services*, 2002 OK 71 9, 55 P.3d 1072, 1077, *quoting Private Truck Council of America, Inc., v. Oklahoma Tax Commission*, 1990 OK 54, ¶ 31, 806 P.2d 598, 607, *vacated and remanded on other grounds by National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991).

tion headquartered in Pawhuska but contains no allegations concerning its members and their interests relating to challenging the ordinance, *except an allegation of shared property interests which it alleges are injured by the ordinance.* Again, this alleged injured interest was contested by defendants based upon the federal court litigation.

¶ 63 The trial court determined the plaintiffs lacked standing because of statements in the federal court's order. Osage Wind's motion to dismiss included photocopies of the Osage Nation's federal court complaint and the judge's findings of fact and conclusions of law used when granting judgment after a non-jury trial. Osage Wind's motion insisted it was a motion to dismiss on a jurisdictional ground of standing and not a motion for summary judgment.

¶ 64 Facts outside the pleadings presented by a motion to dismiss will not convert the motion to one for summary judgment when the facts are used to show a lack of jurisdiction unless the facts are part of an element to the cause of action pled by a party or a defense thereto.[81] Contested jurisdictional facts are adjudicated by the finder of fact for that proceeding and not by a motion to dismiss or summary judgment.[82] This Court has treated standing as jurisdictional.[83] A preclusion defense may be raised

on a motion to dismiss,[84] but we need not analyze this issue because assuming it would apply, the trial court clearly committed error in relying on the federal litigation to determine standing in the state court.

¶ 65 The federal court found that the Osage Nation failed to prove that the Tribe's interests will be harmed "at this time" because the conflict between the Tribe's interests and construction of the Wind Farm was "speculative," and would not support issuing an injunction: "At this time, the alleged conflict between the Wind Farm and plaintiffs' rights to develop the Osage Mineral Estate is speculative." The court determined the Tribe failed to show an "irreparable harm" required for issuing an injunction. Defendants rely on these statements as showing a lack of standing by the Osage Nation in the state court proceeding.

¶ 66 The Osage Nation argues the standing issue raised by Osage Wind involves allegation of harm suffered by the Osage Nation and this necessarily intertwines a jurisdictional standing issue and a non-jurisdictional issue of injury in fact which may not be addressed by a motion to dismiss. Standing may be raised by a motion to dismiss to test the sufficiency of the allegations of a petition,[85] and a 2012(B)(1)[86] motion to dismiss on a jurisdictional issue may also

81. *State ex rel. Board of Regents of University of Oklahoma v. Lucas*, 2013 OK 14, n. 9, 297 P.3d 378, 384; *Powers v. District Court of Tulsa County*, 2009 OK 91, ¶ 6, 227 P.3d 1060.

82. *Colton v. Huntleigh USA Corp.*, 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073.

83. *Wells Fargo Bank, N.A. v. Heath*, 2012 OK 54, ¶ 7, 280 P.3d 328, 332.

84. *Wilson v. State Election Bd.*, 2012 OK 2, 5, 270 P.3d 155, 157 (On appellate review of an order granting a motion to dismiss, the Court stated a determination of whether the preclusion doctrine applies is solely a question of law if (1) the facts are undisputed, (2) the preclusion question can be answered solely by reviewing the judgment put forward as the bar, or (3) the preclusion determination can be made solely by inspection of the record of the proceeding(s) culminating in the judgment put forward as the bar.).

85. *Eldredge v. Taylor*, 2014 OK 92, 339 P.3d 888, 890 (When ruling on a motion to dismiss for lack of standing, the trial court and the appellate

court must accept the petition's allegations and all inferences that can be drawn from them as true.).

86. Standing in federal court is a component of U.S. Const. Art. III "case or controversy" subject matter jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498–499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In an Oklahoma court, standing *may* be considered as a jurisdictional element of "judicial power" vested in courts by Okla. Const. Art. 7 1, or an issue of constitutional justiciability of jurisdictional scope. *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, 652 P.2d 271, 274–275 (when applying standing jurisprudence the Court held "judicial power" was properly invoked, in part, on claims "which affect the [legally cognizable] interest" of a party to the litigation); *Dutton v. City of Midwest City*, 2015 OK 51, n. 69, 353 P.3d 532 (distinguishing subject matter jurisdiction and constitutional justiciability); *Independent School Dist. No. 5 of Tulsa County v. Spry*, 2012 OK 98, 292 P.3d 19, 20 (standing is a jurisdictional issue).

**1246**

raise a factual issue not present on the face of the petition without converting the motion into a motion for summary judgment, except when resolution of the factual issue necessarily adjudicates an element to a claim (cause of action) or defense thereto.[87] We need not adjudicate this argument due to our reversal of the judgment on the issue of standing.

 ¶ 67 In federal courts, facts required to show irreparable harm is a greater burden than showing a party's standing to bring an action.[88] Generally, failure to satisfy a heavier burden of persuasion in one proceeding does not bar relitigation in a subsequent proceeding when the party against whom the preclusion bar is raised has a lesser burden. This view is expressed in opinions by this Court [89] as well as the Restatement (Second) of Judgments, 28(4).[90] The District Court for Osage County's judgment expressly states the Osage Nation "lacks standing to prosecute the claims ... because the Osage Nation and the Osage Minerals Council litigated the issue ... in United States District Court." Standing was not litigated, the burden for an injunction "at this time" (2011) was litigated. The District Court's conclusion on standing is incorrect and is reversed.

 ¶ 68 The Osage Nation does not allege it has either (1) some type of broad Oklahoma "taxpayer standing" involving the expenditure of public funds,[91] or (2) a non-

---

87. *State ex rel. Bd. of Regents of University of Oklahoma v. Lucas*, 2013 OK 14, nn. 9–10, 297 P.3d 378, 384 (explaining (1) that a motion to dismiss based solely upon a jurisdictional ground is not converted to one for summary judgment by reliance upon matters outside the pleadings, but a 2012(B)(6) motion is so converted when reliance is made upon matters outside the pleadings, and (2) an adjudication in the form of summary judgment is on the merits of a controversy.); *Tucker v. Cochran Firm–Criminal Defense Birmingham L.L.C.*, 2014 OK 112, ¶ 21, 341 P.3d 673, 682 (same). *Cf. Powers v. District Court of Tulsa County*, 2009 OK 91, ¶ 6, 227 P.3d 1060, 1067, (classifying attacks upon jurisdiction in federal courts as (1) motions attacking the sufficiency of the complaint, (2) motions which raise extra-pleading facts, and (3) motions that contest jurisdictional facts that are intertwined with the merits of the action and in this last classification the motion is converted to one for summary judgment).

88. *See, e.g., New Mexico v. Dept. of Interior*, 126 F.Supp.3d 1201 (D.N.M. 2014) ("A showing of irreparable harm sufficient to justify an award of injunctive relief requires a greater showing than injury in fact sufficient for Article III standing."); *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C.Cir.2008) ("a plaintiff must do more [to show irreparable harm] than merely allege harm sufficient to establish standing"), citing *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir.1991).

89. *See, e.g., Matter of the Guardianship of Walling*, 1986 OK 50, 727 P.2d 586, 591 (acquittal upon failure of proof in criminal proceeding to satisfy its reasonable doubt standard is not a determination on the lesser standard of preponderance of the evidence).

90. Restatement (Second) of Judgments, 28 (1982):

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

91. *Stevens v. Fox*, 2016 OK 106, ¶ 15, 383 P.3d 269, 275, citing *Thomas v. Henry*, 2011 OK 53, ¶ 6, 260 P.3d 1251 (In order to have taxpayer

Hohfeldian standing seeking to secure judicial relief that would benefit a public entity or the community as a whole.[92] The Osage Nation is asserting standing based upon possession of property interests allegedly harmed by an ordinance. The trial court's judgment made express findings, but did not make any specific findings concerning the regularity of the creation of the Wind Energy Ordinance or the standing of the Osage Nation in challenging that ordinance by declaratory judgment apart from the perceived preclusive effect of the federal court litigation.

¶ 69 This is an appeal in an equity proceeding, but this Court will not make first-instance determinations of an issue of fact in the exercise of an appellate jurisdiction in an equity proceeding.[93] We express no view in the standing of the Osage Nation in the sole cause of action we remand to the District Court for additional proceedings.

¶ 70 We reverse the District Court's judgment on the sole ground that the Osage Nation's petition *against government entities* alleging an invalid Wind Energy Ordinance due to irregularity in its creation is not, as a matter of law, a facially insufficient pleading, and the trial used an incorrect standard for determining Osage Nation's standing for this cause of action. This appeal raises the facial insufficiency of the petition,[94] and a jurisdictional attack based on standing and using facts beyond the face of the petition and its exhibits, and the arguments raised by the parties.[95] This opinion makes no conclusions concerning the standing of the Osage

Nation or the merits of the cause of action remanded.

### III. Conclusion

¶ 71 In appeal Okla. Sup. Ct. No. 113,415, a board of adjustment appeal, we affirm the judgment of the district court dismissing the petition with prejudice in Osage County No. CV-2014-36.

¶ 72 In appeal Okla. Sup. Ct. No. 113,414, a petition for declaratory and injunctive relief in Osage County, No. CV-2014-41, we affirm the judgment of the District Court imposing laches as a bar to all of plaintiff's claims for injunctive and declaratory judgment relief against defendant, Osage Wind, and affirm the judgment dismissing with prejudice the petition's claims against Osage Wind. We affirm the judgment of the District Court dismissing all of the petition's claims with prejudice on injunctive and declaratory relief against the Board of Commissioners of Osage County and Board of Adjustment of Osage County, with one exception.

¶ 73 We reverse the District Court's judgment adjudicating the standing of the Osage Nation due to application of an incorrect standard by the District Court, and remand on the sole cause of action brought by the Osage Nation challenging an ordinance based upon its alleged invalid creation.

¶ 74 COMBS, C.J., and KAUGER, WATT, WINCHESTER, and EDMONDSON, JJ., concur.

standing we have held "a taxpayer possesses standing to seek equitable relief when alleging that violation of a statute will result in illegal expenditure of public funds.").

**92.** Non-Hohfeldian standing is when plaintiff sues to secure judicial relief that would benefit a public entity or the community as a whole, but Hohfeldian standing is when a plaintiff seeks to adjudicate his or her claimed right, privilege, immunity, or power with respect to another party. *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 2011 OK 84, n. 135, 264 P.3d 1197, 1228; *State ex rel. Macy v. Bd. of County Comr's of Oklahoma County,* 1999 OK 53, n. 28, 986 P.2d at 1138.

**93.** *In re Guardianship of Stanfield,* 2012 OK 8, n. 55, 276 P.3d 989, 1001.

**94.** *American Natural Resources, LLC v. Eagle Rock Energy Partners, LP,* 2016 OK 67, 374 P.3d 766, 769.

**95.** Generally, appellate court review is limited to the issues raised by the parties. *Reddell v. Johnson,* 1997 OK 86, ¶ 6, 942 P.2d 200, 202; *Shero v. Grand Savings Bank,* 2007 OK 24, 161 P.3d 298. In a public-law controversy, the Court may grant corrective relief upon any applicable legal theory dispositive of the case *when the legal theory is supported by the record on appeal. Torres v. Seaboard Foods, L.L.C.,* 2016 OK 20, n. 100, 373 P.3d 1057. Due to the record in this proceeding we need not address this issue further.

**1248**

¶ 75 GURICH, V.C.J., concurs in part, dissents in part.

¶ 76 COLBERT, REIF, and WYRICK, JJ., not participating.

Gurich, V.C.J., concurring in part and dissenting in part:

¶ 1 The majority, instead of finally putting this case to rest, remands the case to the District Court to allow the Osage Nation one last futile attempt at invalidating the Osage County Wind Energy Ordinance passed in 2011. The Osage County District Court's dismissal of all of the Nation's claims should be upheld because the Ordinance is not subject to invalidation at this point. For almost six years now, Osage Wind has relied on the validity of a permit issued in August of 2011 pursuant to the Ordinance, "expend[ing], or irrevocably committ[ing] to expend, in excess of $220,000,000 in development costs, interconnection payments, construction payments, and turbine deposits"[1] to construct a wind energy facility. Osage Wind has a vested property interest sufficient to protect it from any decision invalidating the underlying Ordinance.[2] I would affirm the District Court in all respects.

¶ 2 On April 4, 2011, the Osage County Board of Commissioners adopted the Ordinance, allowing the construction and operation of wind energy facilities in Osage County.[3] On July 7, 2011, Osage Wind submitted an "Application for Conditional Use or Variance" to the Osage County Board of Adjustment, seeking a conditional use permit for the construction and installation of a wind energy facility in Osage County. The Board held a hearing on Osage Wind's application for the permit on August 11, 2011. *Certain representatives of the Nation appeared at the hearing and testified against the approval of the permit.* The Board granted Osage Wind's Application for Conditional Use or Variance, and no appeal of the Board's decision was made by any party, including the Nation.[4]

¶ 3 On October 18, 2011, shortly after the Board approved Osage Wind's permit, the Nation sued in the U.S. District Court for the Northern District of Oklahoma to enjoin construction of the Osage Wind project. After holding a non-jury trial, the federal court, on December 20, 2011, denied the Nation's request for a permanent injunction barring Osage Wind from constructing the wind farm in Osage County. The federal court closed the case on February 29, 2012.[5]

¶ 4 Two years later, on March 7, 2014, Mustang Run Wind Project, an affiliate of Osage Wind,[6] filed an application with the Board for a conditional use permit to construct and operate another wind energy facility in Osage County. On April 25, 2014, the Nation submitted to the Board a document entitled "Petition to the Board of Adjustment to Rescind the Wind Capital Energy Project Variance and Prohibit Construction at the Project Site Until the Board Properly Authorizes the Project." In a letter sent with the "Petition," the Nation requested that such be added to the May 8, 2014 agenda and that the Nation be provided the opportunity to address the Board at the meeting.[7]

1. Although the Nation disputes this specific assertion by Osage Wind, the record indicates that construction has started on the project.

2. See Bankoff v. Bd. of Adjustment of Wagoner Cnty., 1994 OK 58, ¶ 8, 875 P.2d 1138, 1141.

3. Record on Appeal, Case No. 113,414, Ex. 3, at 2–3.

4. See 19 O.S. 2011 866.24 ("An appeal to the district court from any decision, ruling, judgment, or order of said county board of adjustment may be taken by any person or persons, firm or corporation, jointly or severally, aggrieved thereby, or any department, board or official of government by filing with the clerk of said board within ten (10) days a notice of such appeal.").

5. The Nation appealed the decision of the federal district court to the U.S. Court of Appeals for the Tenth Circuit, but the Tenth Circuit issued an Order on February 23, 2012, dismissing the appeal based on the stipulation of the parties to voluntarily dismiss the appeal. The federal district court case was closed shortly thereafter.

6. Mustang Run Wind and Osage Wind "are basically the same entity". Record on Appeal, Case No. 113,415, Ex. 6 at 23.

7. Record on Appeal, Case No. 113,414, Ex. 3 at Ex. D.

¶ 5 The Board held hearings on both April 10, 2014, and May 8, 2014, wherein Osage Wind's previously issued conditional use permit and Mustang Run's application for a conditional use permit were discussed at length. On May 8, 2014, the Board denied Mustang Run's application for a conditional use permit but denied the Nation's petition to rescind Osage Wind's conditional use permit. Mustang Run appealed the denial to the District Court of Osage County on May 15, 2014. On May 28, 2014, the Nation initiated an action in the District Court of Osage County, purporting to appeal the Board's decision refusing to rescind Osage Wind's permit. On June 25, 2014, the Nation moved to intervene in the Mustang Run appeal in the District Court, and on that same day, the Nation filed a Petition for Declaratory Judgment and Petition for Permanent Injunction, seeking, among other relief, to permanently enjoin and restrain the Board and Osage Wind from "permitting, authorizing, constructing and using the property" for a wind energy facility. The Nation was allowed to intervene in the Mustang Run case, and all three cases were heard by the District Court on August 28, 2014, and again on October 23, 2014.

¶ 6 Despite full participation by the Nation, the District Court vacated the decision of the Board and ordered the Board to issue a conditional use permit to Mustang Run, and denied the Nation's belated attempt to rescind Osage Wind's permit, finding unreasonable delay in attempting to halt the project. The Nation and the Board appealed the Mustang Run decision, and the Nation appealed the Osage Wind decision. All three cases were retained by this Court on December 5, 2014, and made companion cases by

order of this Court on December 10, 2014. On November 1, 2016, this Court issued an opinion in Mustang Run Wind Project, LLC v. Osage County Board of Adjustment, 2016 OK 113, 387 P.3d 333, affirming the District Court's decision to grant a conditional use permit to Mustang Run.

¶ 7 We plainly held in Mustang Run, **the companion case,** that the "Osage County Board of Adjustment possesses authority to grant conditional use permits."[8] In fact, in that case we affirmed the issuance of the permit specifically for a wind energy facility even though the facility was located, at least in part, on "land zoned for agricultural use" and was, at the time of the application, "being used for agriculture and ranching."[9] The Nation was allowed to intervene in Mustang Run and made the same argument in that case as they do here—that the zoning ordinances in Osage County do not permit *any* wind energy facility in an area zoned agricultural, and as such, the Board was not authorized to issue the permits.[10] All issues regarding the validity of the Ordinance were decided in Mustang Run.

¶ 8 The majority reverses and remands the Nation's "sole cause of action" against the Board challenging the validity of the Ordinance "due to irregularity in its creation ...." Maj. Op., ¶ 70. The opinion states: "Plaintiffs' petition also seeks a declaratory judgment that the zoning ordinances in Osage County do not permit *any* wind energy facility in an area zoned as an agricultural district. This claim is based upon an allegation the Osage County Wind Energy Ordinance was adopted by the Pawhuska-Osage County Area Planning Commission and the Board of County Commissioners of Osage

---

8. Mustang Run, 2016 OK 113, ¶0, 38, 387 P.3d 333.

9. Id. 1.

10. Record on Appeal, Case No. 113,414, Ex. 5 at 27 ("[T]he Wind Energy Ordinance did not amend the Zoning Ordinance of Osage County and thus did not authorize the Board of Adjustment to grant conditional use permits for wind energy facilities.").

The Nation's Trial Brief in the Mustang Run Wind Project case states: "Under Osage County

law, the Board may authorize the Project only if the Zoning Ordinance allows for the development of a wind energy facility in Osage County. But it does not. **The Zoning Ordinance does not identify a wind energy facility as an "as or right" use in any zoning District in Osage County.** Nor does the Zoning Ordinance identify a wind energy facility as a land use that may be 'permitted subject to the granting of a conditional use permit' in any zoning District in Osage County." Record on Appeal, Case No. 113,463, at 2096; 2102-2103 (emphasis added). The issue was raised again on appeal. See Counter Petition in Error, Case No. 113,463.

County after a notice to the public which failed to expressly state the Wind Energy Ordinance was an amendment to specific zoning ordinances."[11] The Osage County Board of Commissioners passed the Ordinance in 2011, **and the Nation waited more than three years to attempt to invalidate such ordinance.** Osage Wind lawfully and in good faith obtained the permit from the Board and began construction on the wind farm.

¶ 9 The majority assumes throughout that the Nation has standing to proceed,[12] yet reverses that portion of the District Court's judgment adjudicating the standing of the Nation to challenge the validity of the Ordinance "due to application of an incorrect standard."[13] First, the Nation fully participated in the initial Board hearing on Osage Wind's application for the permit in 2011, and no appeal of the Board's decision was taken to the District Court. Instead, the Nation filed a separate federal lawsuit in 2011 seeking injunctive relief. I agree the federal court's denial of the Nation's request for injunctive relief in Case No. 11-CV-643-GFK-PJC does not control whether the Nation now has standing to proceed in state court. But the District Court specifically found that regardless of the federal court litigation, the allegations raised by the Nation in the Petition for Declaratory Judgment, "in any event," were "insufficient as a matter of law to confer standing upon the [the Nation] because they *fail[ed] to demonstrate an injury in fact to a legally protectable interest of [the Nation].*"[14]

11. Maj. Op., ¶ 57.

12. See, e.g., Maj. Op., ¶ 29 ("Defendants also challenged the standing of the Osage Nation, and we assume it did possess standing for the purpose of this opinion and application of the laches defense.").

13. Maj. Op., ¶ 73.

14. Record on Appeal, Case No. 113,415, Ex. 9 at 4 (emphasis added).

15. The Nation specifically preserved the standing issue on appeal. See Petition in Error, Case No. 113,414, Ex. C ("Plaintiffs'/Appellant's Petition plead an actual controversy under the Oklahoma

¶ 10 In Knight ex rel. Ellis v. Miller, 2008 OK 81, ¶ 8, 195 P.3d 372, 375, this Court set forth the requirements for standing under the Oklahoma Declaratory Judgment Act:

> The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) *the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protect[a]ble interest*; and (4) the issue involved in the controversy must be ripe for judicial determination. (emphasis added).

The District Court applied the correct standard in concluding the Nation lacked standing to challenge the Osage County Board of Commissioners' adoption of the Ordinance.[15] Nevertheless, even if the District Court applied the incorrect standard or erroneously concluded the Nation lacked standing, this Court should assume the Nation had standing to proceed and decide the case.[16] The Nation has fully participated in the litigation and has briefed all issues. We should resolve all issues and affirm the District Court's dismissal on different grounds because the Ordinance is not subject to invalidation at this point.[17] Any decision invalidating the Ordinance on remand cannot retroactively apply to Osage Wind or Mustang Run under

Declaratory Judgment Act, 12 O.S. 2011, 1651–1657.").

16. This Court has often assumed, without deciding, that a party has standing so as to reach the merits of a controversy. See, e.g., Keating v. Johnson, 1996 OK 61, 918 P.2d 51 (assuming without deciding that the Governor and two legislators had standing to bring the original proceeding).

17. "If the trial court reaches the correct result but for the wrong reason, its judgment is not subject to reversal. Rather, the Court is not bound by the trial court's reasoning and may affirm the judgment below on a different legal rationale." Hall v. GEO Group, Inc., 2014 OK 22, ¶ 17, 324 P.3d 399, 406.

the facts of the case. I dissent to this portion of the opinion and would affirm the District Court's dismissal of all claims.